## STATE OF MINNESOTA vs. C. B. WADDELL.

Argued April 26, 1892. Decided May 5, 1892.

Minneapolis Public Park Board—Powers of.—The act providing for a system of public parks and parkways in Minneapolis, being Sp. Laws 1883, ch. 281, did not authorize the board created by it to vacate or close, or exclude any class of vehicles from, any street, except such as might run through any tract of land taken for a park, and it could not acquire that power over a street by merely widening it by acquiring title to a strip on each side.

Appeal by defendant, C. B. Waddell, from the judgment of the Municipal Court of the city of Minneapolis, *Mahoney*, J., entered October 8, 1891.

Complaint was made October 1, 1891, by J. Cousineau, that defendant on that day drove a team and lumber wagon along Hennepin Avenue Boulevard, from Douglass Avenue to Eighteenth Street, contrary to section twelve (12) of an ordinance of the Board of Park Commissioners adopted June 25, 1887. A warrant was issued, and he was arrested and brought before the Municipal Court, where he pleaded not guilty. On the trial he admitted that on that day he had brought a load of produce from his farm to the city and sold it. On his return, he was driving in his empty wagon along the avenue between Lyndale Avenue and Lake Street when he was arrested.

This part of Hennepin Avenue had been for twenty-five years prior to May 3, 1884, a public highway sixty-six feet wide. On that day the Board of Park Commissioners of the city designated it as a parkway eighty-eight feet wide, and procured deeds from the owners of a strip of land eleven feet wide on each side, and graded and improved the avenue as thus enlarged. Defendant was found guilty and fined five dollars. He appealed from the judgment.

*Young & Nye,* for appellant.

*B. B. Clay,* for respondent.

GILFILLAN, C. J. Sp. Laws 1883, ch. 281, provided for a system of public parks and parkways in the city of Minneapolis. Section two (2) authorized the commissioners appointed by the act "to devise and adopt a system of public parks and parkways within the limits of, and for the use of, the city of Minneapolis; to designate the lands and grounds to be used and appropriated for such purposes; to cause the same to be surveyed, platted, and a plat thereof to be filed in the office of the city engineer; and upon obtaining title or the right of possession to the same, or any part thereof, to take possession of, hold, govern, and administer the same, and to lay out and improve the same, according to such plan as the said board may adopt for such purposes." In the following sections were provisions for obtaining title to the lands by gift, devise, purchase, lease, or condemnation. Section eight (8) provided: "It shall be lawful for said board of commissioners to vacate and close up any and all roads and highways, excepting railroads which may pass through, divide, or separate any lands selected or appropriated by it for the purpose of parks," and no such road, highway, or railroad shall be laid out through said parks, or any of them, except as the said board of commissioners shall lay out and construct, or shall consent thereto."

Hennepin avenue, between Lyndale avenue and Lake street, was, and for many years had been, a public highway, sixty-six feet wide. On May 3, 1884, the board designated that part of the avenue as a parkway for forty-four feet on each side of the center line thereof, and procured from the owners conveyances of a strip eleven feet wide on each side of the highway, thus making it eighty-eight

feet wide, and then assumed charge of the eighty-eight feet, graded and graveled it, put in curbing, and set trees along it.

The question in the case is, could the board vacate or close that part of the avenue to general travel, for which it might previously have been used, and confine its use to what may be termed park or pleasure travel? It is clear they could not, under section eight, (8,) vacate or close the avenue, or exclude travel from it, as it originally was; and, after taking the strip eleven feet wide on each side, the street could be closed or vacated only on the proposition that it passed through, separated, or divided lands selected or appropriated for the purpose of parks, within the meaning of that section. It may be remarked that the width of the strip acquired on each side is immaterial so long as it amounted to nothing more than a widening of the street. Acquiring a strip on each side eleven inches wide would have been just as effectual, so far as bringing it within section eight (8) is concerned. The act seems to recognize a distinction between parks and parkways. By the latter term is undoubtedly meant, not a body of land laid out for purposes of pleasure and recreation, but roads, avenues, or streets primarily for purposes of passage. Section eight (8) applies only to parks. The legislature had in mind that, in case of a tract of land appropriated for a park, in order to make it most available for that purpose, it might be necessary to close or vacate roads or highways running through it. The power given by the section takes such roads or highways out from the control of the common council,—the body that has the general supervision and control over roads, highways, and streets in the city. We are not to suppose the legislature intended to do that any further than is expressed in the act, or implied, because necessary to accomplish its purposes.

The power to exclude from any street taken possession of by the board any kind of travel, or travel with any vehicle ordinarily used for travel, can only be found in the power given to close or vacate. And while the board may probably make a parkway of any established street, and may regulate the use of and the travel upon such parkway, it cannot vacate or close it, nor exclude from it vehicles which otherwise have a right to travel upon it. If it could, it might

take possession of any street in the city, and exclude from it all vehicles except those used for purposes of pleasure,—a power that cannot well be implied from the provisions of section eight, (8.)

Judgment reversed.

(Opinion published 52 N. W. Rep. 213.)