THE WEST CHICAGO PARK COMMISSIONERS

*v.*

THE CITY OF CHICAGO *et al.*

*Opinion filed December 22, 1897.*

1. APPEALS AND ERRORS—*points raised for first time in reply brief are not entitled to notice.* Points raised for the first time in the appellant's reply brief are not entitled to notice, as the appellee is debarred from arguing them and the court deprived of the benefit of the argument.

2. ESTOPPEL—*when park commissioners are estopped to question legal existence of streets crossing a boulevard.* Where the owner of property on each side of a boulevard lays out and plats a subdivision, with streets crossing the boulevard, and submits the plat to the park commissioners for approval, and the streets are used by the public, after the recording of the plat, for several years, with the knowledge of and without objection by the commissioners, the latter are estopped to question the legal existence of such streets, although they may not have approved the plat.

3. MUNICIPAL CORPORATIONS—*jurisdiction of city, and park boards, over street and boulevard intersections.* The jurisdiction of a city and of park commissioners over the rectangular areas formed by the intersection of public streets with a boulevard under control of the commissioners is concurrent, and neither has power to cut off or close up the intersecting ways, by viaduct approaches or otherwise, without the consent of the other.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

H. S. MECARTNEY, for appellant.

WILLIAM G. BEALE, Corporation Counsel, and GEORGE A. DUPUY, Assistant, for appellee the city of Chicago.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The controversy in this case is between the West Chicago Park Commissioners and the city of Chicago, as to which of them has jurisdiction and control over the rectangular areas which constitute the intersections of South

West boulevard with Nineteenth and Twenty-first streets, in said city.   The dispute arose in this way:   About the year 1881 the West Chicago Park Commissioners, by condemnation proceedings and other legal means, established the boulevard 250 feet wide, extending south from the middle of the south line of Douglas Park across the right of way of the Chicago, Burlington and Quincy Railroad Company.   In the condemnation proceedings $25,000 was awarded to the railroad company as its damages, but the judgment was never paid, and on February 1, 1883, the commissioners and the company entered into a contract for the building of a viaduct on the line of the boulevard over the right of way, each to do a certain portion of the work, and when the viaduct and approaches were completed the company was to satisfy the judgment or assign it to the commissioners.   Nothing was done under the contract, and in 1887 Levi P. Morton, the owner of the fee in the premises on each side of the railroad right of way, laid out and platted a subdivision, with the streets in question crossing the boulevard at right angles.   The plat was duly recorded on March 12, 1887, and since that date said streets have been in constant use by the public as streets of said city, and the ordinary traffic thereon has extended across the boulevard with the knowledge of and without objection by the park commissioners.   On February 23, 1893, an ordinance of the city of Chicago was duly passed and is still in force, providing for the elevation of the railroad tracks in said city.   The old plan and contract for a viaduct contemplated leaving the tracks at their original level, but with the tracks elevated the boulevard would naturally go under them and the viaduct would be useless.   The proposed viaduct would also cut off the crossings of these streets across the boulevard by the approaches and retaining walls of masonry.   In 1895 the commissioners and railroad company concluded to put in operation their agreement and build a viaduct in accordance with their plan.   The city, influenced, perhaps, by

the want of harmony between its plans for track eleva-
tion and the plan of the commissioners, objected to the ob-
struction and cutting off of the crossings of these streets
by the proposed approaches. It was not denied that the
parties had a right to build a viaduct, leaving these street
crossings open under the approaches, but the city in-
sisted that they should not be cut off. The commission-
ers proposed to make a passageway on each side of the
approach, by which travel on Nineteenth street could go
north about 250 feet, and, crossing the boulevard, come
back to Nineteenth street, and like passageways south
from Twenty-first street, by which travel would have to
go 400 feet south and come back that distance to said
Twenty-first street. They undertook to carry out their
scheme, and being prevented by the police force of the
city, they filed the bill in this case for an injunction to
restrain such interference, and on a hearing the bill was
dismissed at their costs.

In the reply brief the point is sought to be made for
the first time that the intersecting streets were not laid
out according to law. Appellants are not entitled to have
this point noticed, for the reason that all propositions
must be raised in the original brief, so that appellees
may not be debarred from the privilege of argument and
the court may have the benefit of such argument. But
we are of the opinion that the point is without merit.
The law requires the approval of the park commissioners
to a plat or subdivision of the property within 400 feet of
the boulevard lines. Levi P. Morton submitted the plat
in question to the commissioners and it was referred to
the subdivision committee. Whether the committee had
power to act or what they did does not appear, but the
commissioners recognized the streets and the rights ac-
quired without objection, and are certainly now debarred
from questioning their legal existence after the lapse of so
many years. The streets and boulevard must be regarded
as intersecting streets, the former under the control of

the city and the latter under the jurisdiction of the park commissioners. By the statute the most comprehensive powers are given to the city over the streets within its domain, and by the Park act the same power and authority over the boulevard are vested in the park commissioners. Each corporation is of equal power and dignity within the limits assigned to it by the law, and each has an equal right within the areas covered by these intersections, which belong to both in common. It would be the height of absurdity to say that at each intersection of a street with a boulevard the powers of either cease at the line of intersection and begin again when the intersection is passed. It was unquestionably the design of the legislature that a boulevard, when laid out, should be a continuous drive-way for pleasure and that the streets crossing it should be continuous highways. It could not be contemplated that either authority could cut off or close up the intersecting way without leave of the other. If the commissioners have the power to shut up these streets and compel the public to go around 250 feet north or 400 feet south over a new crossing, they have a right to shut them up absolutely. The principle is the same in either case, and the existence of such a power cannot be conceded. The jurisdiction, as we think, is concurrent, the commissioners having jurisdiction over the boulevard for all its uses and purposes, and the city having jurisdiction over the intersecting streets, subject to any limitations of use that may arise out of the park acts.

It is said that the city can raise the streets by approaches so as to go over the viaduct walls and approaches; and while that is doubtless true, the question here is whether they can be coerced into doing so in order to preserve their street crossings. We do not think that is so, and being satisfied with the decree of the circuit court it will be affirmed.    *Decree affirmed.*