STATE ex rel. WILLIAM H. TOWNSEND v. BOARD OF PARK COMMIS-
SIONERS OF CITY OF MINNEAPOLIS.[1]

February 21, 1907.

Nos. 14,897—(82).

**Parks and Parkways.**

The power to lay out, open, vacate, or abandon public highways, parks. or parkways is legislative, to be exercised by the legislature itself, or municipal boards to which it. is delegated.

**Contract Limiting Control of City.**

A municipality, acting through its legislative body, has no power to enter into contracts which curtail or prohibit an exercise of its legislative or administrative authority over streets, highways, or public grounds, whenever the public interests demand that it should act.

**Application to Legislature.**

The rule applies to the legislature itself, and prohibits that body from alienating or surrendering the right and duty to exercise appropriate supervision over public streets and grounds whenever the welfare of the state requires its action.

**Perpetual Care of Street.**

Relator and other owners of property along Hennepin avenue in the city of Minneapolis conveyed a strip of land on either side of the avenue to the city to enable the park board to transform the avenue into a parkway, for the consideration, in part, that the avenue should thereafter be forever maintained as a parkway free of cost by special assessment or otherwise to the property owners so conveying to the city. *Held* that, so far as the contract arising from this transaction required the park board

---

[1] Reported in 110 N. W. 1121.

perpetually to maintain the avenue as a parkway free of cost to relator is concerned, it was an attempted alienation of legislative duties to the public respecting the control and management of public highways, and invalid, even 'though the act of the legislature creating the park board may be construed to confer authority upon the board to enter into it.

**Vacation of Parkway.**

A determination by proper legislative authority that public interests require or justify the vacation of streets or public grounds of any description is final and conclusive upon the courts, except when reviewed in the manner prescribed by law, and will be presumed to have been based upon a consideration of public interests.

**Same.**

The parkway involved in the case at bar is *held* to have been vacated by the action of the park board under authority of chapter 304, p. 546, Sp. Laws 1885.

Appeal by the relator from an order of the district court for Hennepin county, Holt, J., overruling a demurrer to the answer.   Affirmed.

*Daniel Fish,* for appellant.

*C. J. Rockwood,* for respondent.

BROWN, J.

Proceedings in mandamus to compel the board of park commissioners of the city of Minneapolis to resume the duties imposed upon it respecting the maintenance and management of the public parkway of that city known as Hennepin Boulevard.

It appears from the pleadings, among other things, that the board of park commissioners of the city of Minneapolis was created and organized pursuant to chapter 281, p. 404, Sp. Laws 1883.   That statute authorized, in general terms, the park board to acquire for park and parkway purposes lands adjacent to or within the city, either by purchase, donation, or condemnation proceedings, and thereafter to maintain the same for the purposes for which they were acquired, to levy assessments against lands benefited by the proposed park or parkway, and to exempt therefrom certain property owners who conveyed lands to the city for such purposes.   It was also authorized to issue bonds of the city for the purpose of defraying expenses incurred in the purchase of lands, the amount of which was made a lien upon all parks

acquired by the board. The act further provided that lands which were obtained and devoted to park and parkway purposes should forever remain such for the free use of the inhabitants of the city, subject to such rules and regulations as the board might from time to time prescribe.

Under the authority thus conferred, the park board, with the consent of the city council, converted Hennepin avenue, an existing street, into a parkway. To enable the board to accomplish this, it became necessary to obtain from the owners of property abutting upon the avenue a strip of land eleven feet wide on either side of the same. This was obtained by deeds of conveyance from the various owners, including relator, all of which contained a provision to the effect that the transfer to the city was made at the instance of the park board for parkway purposes, and upon the express agreement and understanding that, in addition to the consideration therein expressed ($80), all other property then owned by the grantors should be thereafter exempt from all assessments appertaining to the improvement of the avenue as a parkway. These deeds conveyed, in addition to the eleven-foot strip just referred to, title to the center of the street. They were accepted by the board, and thereafter possession was taken and the strip improved by sodding and planting ornamental trees therein.

The park board continued in the control and supervision of the avenue so transformed into a parkway until 1905, when, acting under the authority conferred by chapter 304, p. 546, Sp. Laws 1885, a resolution was adopted by it vacating and abandoning the same as one of the parkways of the city, on the ground that it was impracticable to continue its maintenance for that purpose. Thereafter relator brought this proceeding to compel the board to resume control of the avenue and to maintain the same as a parkway. The facts are fully set forth in the writ and defendant's answer. Relator appeals from an order of the court below overruling his demurrer to the answer.

The proceeding is founded upon the contention that the transaction between the owners of abutting property along Hennepin avenue and the park board, by which the eleven-foot strip was conveyed to the city at the instance of the board, constituted a contract between the parties, by which the park board bound itself perpetually to maintain

the avenue as a parkway, free of cost or expense by special assessment or otherwise to the adjacent property owners, who conveyed the strip of land mentioned upon that consideration; that the rights of the parties became unalterably fixed when the deeds were executed and delivered to the city; and that the board could not thereafter either vacate or abandon the avenue as a parkway, but was for all future time to maintain the same for the purposes contemplated by the parties. It is also contended that the power given the park board by chapter 304, p. 546, Sp. Laws 1885, to vacate and discontinue parks, parkways, and boulevards is inoperative as to the parkway here in question, for the reason that the power to vacate was granted subsequent to the contract alleged to have been entered into, evidenced by the deeds to the park board, the obligations of which, it is insisted, could not be impaired by subsequent legislative action.

Hennepin avenue is, and has been at all times since the incorporation of the city, a public street, and a substantial view of the facts disclosed by the pleadings will not permit of a conclusion that its character as such, except to the extent to which it may be used by the public, has ever been changed by any act of the park board or the city council. The park board took possession of it in 1884, with the consent of the city council, for the purpose of transforming it into a parkway, but with no intention that its character as a public thoroughfare of the city should be at all changed, save in a restriction of travel thereon. There seems to have been some doubt of the authority of the board, under the act creating it, to take possession of existing streets and transform them into parkways, and to remove this doubt chapter 304, p. 546, Sp. Laws 1885, was enacted. It was there provided that all parkways which had been theretofore, or which might thereafter be, acquired in or adjacent to the city should be subject to the control and government of the park board, provided that no street, alley, or public place should be made a parkway without the consent of the city council. So that whether, strictly speaking, the action of the park board in taking possession of this avenue and transforming it into a parkway was authorized or not, the action of the board was confirmed by the act of the legislature just referred to. It is probable that the authority of the board over this particular parkway was erroneously restricted by the decision in State v. Waddell, 49 Minn. 501, 52 N. W. 213, occa-

sioned by a failure of counsel to call attention to a statute which seems to support the validity of the ordinance there before the court. But we are not concerned with that question at this time. For reasons presently to be stated we are bound to assume that the act of the board in vacating the parkway was based upon a consideration of public interests into the merits of which we are not permitted to inquire.

The basis of this proceeding, from the standpoint of relator, as already observed, is the alleged contract right possessed by him to the continued existence and maintenance of this avenue as a parkway. It may be conceded for the purposes of the case that the transaction between the relator and the board constituted in a strict legal sense a contract between the parties, but it is clear that it was ultra vires and not enforceable. It is elementary and fundamental that the power to lay out, open, widen, extend, vacate, or abandon public highways, public parks, parkways, or boulevards is legislative, pure and simple, to be exercised by the legislature itself, or by municipal boards to which it may be delegated. It is also elementary that a municipality, acting through its legislative body, has no power to enter into contracts which curtail or prohibit an exercise of its legislative or administrative authority over streets, highways, or public grounds, whenever the public good demands that it should act. Elliott, Roads and Streets, § 657; Long v. City of Duluth, 49 Minn. 280, 51 N. W. 913, 32 Am. St. 547; Louisville v. City, 8 Bush, 415; Milhau v. Sharp, 27 N. Y. 611, 84 Am. Dec. 314; American v. Hess, 125 N. Y. 641, 26 N. E. 919, 13 L. R. A. 454, 21 Am. St. 764; Davis v. Mayor, 14 N. Y. 506, 67 Am. Dec. 186; Goszler v. Corporation of Georgetown, 6 Wheat. 593, 5 L. Ed. 339; City v. Gleason, 91 Ind. 568; City v. Carpentier, 13 Cal. 540; Gale v. Village, 23 Mich. 344, 9 Am. 80; Belcher v. St. Louis, 82 Mo. 121; State v. Murphy, 134 Mo. 548, 31 S. W. 784, 34 S. W. 51, 35 S. W. 1132, 34 L. R. A. 369, 56 Am. St. 515; City v. Girard, 21 Colo. 447, 42 Pac. 662; Snyder v. City, 176 Ill. 397, 52 N. E. 62, 44 L. R. A. 407; Wabash R. Co. v. Defiance, 167 U. S. 88, 17 Sup. Ct. 748, 42 L. Ed. 87; Penley v. City, 85 Me. 278, 27 Atl. 158, 21 L. R. A. 657.

Though the facts involved in the cases cited are not identical with those in the case at bar, the decisions there made will be found to up-

hold the general principle that municipal authorities have no power to contract away rights of the public which rest in legislative discretion. Contracts involving proprietary or business functions are upheld, but no well-considered case can be found wherein it is held that a contract relinquishing, or by which a municipality agrees to refrain from, the exercise of the police power, or other legislative duty to the public, is valid or enforceable. Elliott, Roads and Streets, § 742. The rule applies to the legislature itself, and prohibits that department of government from alienating or surrendering the right and duty to exercise appropriate police supervision of public affairs, when the welfare of the state requires its exercise. 22 Am. & Eng. Enc. (2d Ed.) 921. The reasons for the rule are obvious, founded in the plainest principles of public policy, and require no discussion to support them. The alleged contract in the case at bar comes squarely within its prohibitions, and is invalid, even though the act creating the park board be construed as authorizing the board to enter into it. The act to this extent was an attempted alienation of the police power and void.

It follows that relator has no valid contract or other vested right to the continued maintenance of the parkway in question, and we have only to inquire whether it was vacated by the resolution enacted by the board for that purpose. That the resolution effected a vacation, if the board had authority to take such action as respects this particular parkway, there can be no question. It is unnecessary to here set it out. It is sufficient to say that it distinctly designated the parkway and declared it vacated and abandoned as such. We are not permitted to inquire into the motive actuating the board, no fraud being charged. It is thoroughly settled law that a determination by proper legislative authority that public interests require or justify the vacation of streets or highways of any description is final and conclusive upon the courts, except when reviewed in the manner prescribed by law, or where fraud or collusion is shown. The action of the park board here under consideration comes within this rule and cannot be attacked in this collateral proceeding. Though we are required to apply the general rule of presumptive validity of official action, and assume that a consideration of public interests prompted the resolution vacating the parkway, it affirmatively appears that such was in fact

the foundation of the board's action. It was found impracticable to maintain the avenue as a parkway. This action of the board is conclusive. New London v. Davis, 73 N. H. 72, 59 Atl. 369; Kakeldy v. Columbia, 37 Wash. 675, 80 Pac. 205; Tilly v. Mitchell, 121 Wis. 1, 98 N. W. 969; Knapp v. St. Louis, 156 Mo. 343, 56 S. W. 1102.

It is also clear that chapter 304, p. 546, Sp. Laws 1885, under which the board acted, conferred authority upon it to vacate the parkway. It is suggested that the act should not be construed to authorize the park board to vacate this particular parkway, not only because to do so would result in the impairment of relator's alleged contract, but, further, because the legislature did not intend to vest in the park board authority to vacate parks and parkways previously laid out and established. There can be no serious doubt as to the scope of this statute. By section 1 all parkways established prior to the passage of the act, and all that might thereafter be established, were committed to the superintendence and control of the park board. By section 2 authority is expressly conferred upon the board to exercise all powers possessed by the city council respecting laying out, opening, vacating, or discontinuing streets. The several sections of this act are in pari materia and should be construed together. The authority to vacate extends to the parks and parkways which were by section 1 committed to the control of the board.

This disposes of the case, and a consideration of other incidental questions discussed in the briefs is unnecessary. We may say, however, in passing, that chapter 18, p. 454, Sp. Laws 1887, authorizing the park board to sell and dispose of lands obtained for parks and parkways, when no longer used for that purpose, can have no application to the facts here involved. At least, the sale therein authorized to be made must receive the sanction and approval of the district court, and it is fair to assume, even if it be conceded—a concession we do not make, however (Reed v. Park Board, infra, p. 167, 110 N. W. 1119) —that the city acquired an unqualified fee to the strip of land in question, that a sale thereof, in view of its situation and the purpose for which it was conveyed to the city, would not be authorized or approved. The statute, as applied to this particular property, if construed unconditionally to authorize a sale of the strip, is of doubtful

validity. City of St. Paul v. Chicago, M. & St. P. Ry. Co., 63 Minn. 352, 63 N. W. 267, 65 N. W. 649, 68 N. W. 458, 34 L. R. A. 184. The case is similar, from the standpoint of the legal rights of the parties, to Vanderburgh v. City of Minneapolis, 98 Minn. 329, 108 N. W. 480.

The authority to vacate public parks, streets, and parkways being legislative, it is beyond the power of the court to set aside the action of the board in vacating the parkway in question, and if, by reason of contractual rights or otherwise, relator has been damaged or injured by the vacation, an action for damages will afford him adequate relief; and that is his exclusive remedy.

Order affirmed.

LEWIS, J. (dissenting).

My views are so much at variance with those expressed in the foregoing opinion, it seems necessary to a correct understanding of my position to set forth with some detail the various laws involved and the nature of the pleadings.

The information sets out:

That the board of park commissioners of Minneapolis was duly organized under the provisions of chapter 281, p. 404, Sp. Laws 1883. That May 3, 1884, pursuant to the provisions of that act, the board duly designated and selected for the purpose of a public parkway the street in Minneapolis known as Hennepin avenue and eleven feet on each side thereof from Lyndale avenue to Lake street, embracing a strip of land eighty eight feet wide, lying forty four feet on each side of the center line of Hennepin avenue from its intersection with Lyndale to its intersection with Lake street. That May 3, 1884, the park board duly instituted proceedings for the acquisition of the lands in question by condemnation in accordance with the authority conferred by the act, which proceedings were in all things maintained and conducted until all of the property so selected was duly acquired and vested in the city of Minneapolis for the purposes of such public parkway, either by means of such condemnation or by purchase and conveyance as hereinafter stated. That at that time the relator herein was the owner and occupant of lot 2, block 5, of L. F. Menage's addition

to Minneapolis, which lot fronted and abutted upon Hennepin avenue a width of fifty four feet. That on or about October 24, 1884, and while the condemnation proceedings aforesaid were yet pending, the relator herein agreed with the city of Minneapolis, through the agency of the park board, to convey eleven feet off the front of lot 2 and the fee to the thirty three feet in the street, in consideration of $80 in money and the perpetual exemption of the remainder of such lot and all other land owned by the relator from all assessments for benefits appertaining to the improvement of Hennepin avenue as a parkway. That pursuant to such agreement the relator and his wife duly executed and delivered to the park board a deed of the premises. That the park board duly accepted the deed, caused it to be recorded, and has ever since held possession and control of such ground under and by virtue of the terms, purposes, and conditions of such grant. That during 1884 the park board also acquired and caused to be vested in the city of Minneapolis the like frontage of all the lots and lands abutting on Hennepin avenue on both sides from Lyndale avenue to Lake street. That immediately following the acquisition of such property, and during 1884, the park board proceeded to the improvement of such property as a parkway, and from thenceforward continued to maintain and manage the same as such until the time hereinafter stated, and in so doing caused the parkway to be graded to its entire width of eighty eight feet, placed curbing along both sides thereof, planted trees, shrubs, and grass therein, and in all things maintained, treated, and administered the same as a public parkway, and as an integral part of the park system of Minneapolis, under the designation of Hennepin boulevard. That the city council of Minneapolis has at all times consented to the taking, widening, and operating of such avenue by the park board to and for such purposes, and has permitted the park board to have and exercise exclusive jurisdiction and control thereof without hindrance or interference.

That in August, 1890, the park board, by an ordinance duly adopted and published, granted to the Minneapolis Street Railway Company permission to lay, construct, maintain, and operate a double-track electric passenger railway through the entire length of the boulevard, receiving from the company $25,000 as compensation for such privileges.

That the money so received was paid into the treasury of the park board, and the electric street railway has ever since been operated upon such parkway.

That for more than a year prior to the issuing of the writ, March 15, 1906, the park board has neglected to maintain the driveways upon the boulevard in suitable condition for travel, has neglected to properly surface, drain, and sprinkle the same, to the great inconvenience, discomfort, and damage of the relator and all other residents thereon, and has permitted the parkway to remain without repair, and to become uneven, broken, and dangerous to travelers passing thereon.

That on or about December 4, 1905, the park board wrongfully and unlawfully attempted to renounce all its duties in respect to the greater part of the parkway, and to deprive the relator, and other residents thereon, and all other inhabitants of Minneapolis, of the rights and advantages secured to them by the establishment thereof, and publicly avowed its purpose thenceforward to abandon all care, maintenance, jurisdiction, and control of such parkway, and to permit the same to revert to its original condition, and to surrender to the present owners of abutting property the additional twenty two feet so purchased and paid for by the city for parkway purposes. That in pursuance of such unlawful design the park board, at one of its regular meetings, held December 4, 1905, pretended to assume and adopt certain resolutions as follows:

> Be it resolved, by the board of park commissioners of the city of Minneapolis, that the following named parkways, and all rights and powers heretofore assumed with reference thereto by the board of park commissioners, be, and the same hereby are, vacated and abandoned, namely, Hennepin Avenue Boulevard, from its intersection with Groveland avenue, in the Fourth ward, to its intersection with Lake street, in the Eighth ward of the city of Minneapolis; and Lyndale Avenue Boulevard from its intersection with Western avenue, in the Fourth ward, to its intersection with Twenty-Ninth Avenue North, in the Tenth ward of the city of Minneapolis.

> Resolved, further, that the proper officers of the board be, and hereby are, authorized to execute and deliver warrants on

the city park fund to the city treasurer, for the benefit of the several ward funds named below, to provide for the sprinkling of Hennepin avenue and Lyndale avenue during the season of 1906, namely:

> For the Third ward, $560.
> For the Fourth ward, $240.
> For the Eighth ward, $346.
> For the Tenth ward, $96.

Resolved, further, that the secretary of the board be directed to transmit forthwith to the city clerk of the city of Minneapolis a certified copy of the foregoing resolution for presentation to the city council.

That the park board caused the unauthorized and illegal action aforesaid to be recorded in the minutes of such meeting, and has ever since asserted and maintained that it thereby became absolved from further duties in respect to that part of the parkway described in such resolution, and has refused to further improve, maintain, and administer the same as a public parkway, or at all. That neither the treasurer of the city nor any other officer or department thereof has accepted or received the warrants of the park board for the sums of money specified in the second of the resolutions, nor has any officer or department of the city government in any way approved or acquiesced in the wrongful action aforesaid.

The answer of the park board alleged: Its organization under the provisions of chapter 281, p. 404, Sp. Laws 1883, and certain other special laws, viz.: Chapter 96, p. 265, Sp. Laws 1885; chapters 17, 18, 19, and 20, pp. 453, 454, 455, 457, Sp. Laws 1887; chapters 30 and 103, pp. 560, 720, Sp. Laws 1889. That the park board took certain proceedings with reference to the condemnation and acquisition of the property mentioned in the writ, which are set out and designated as Exhibits 5 to 17, inclusive, but alleges that all of such motions, resolutions, and actions taken or attempted to be taken were void and of no effect for want of power and authority. That no deeds were executed or delivered by the relator, or by any other property

owner on Hennepin avenue, except in the manner following: That on or about the month of October, 1884, several deeds were executed, among others the deed of which a copy is incorporated in the information of relator; but none of such deeds were ever presented to or accepted by the park board, and the contents of the deeds were never called to the attention of the park board, but were in fact, after being recorded, deposited in the office of the park board, and there remained. That no list of lands to be exempted from assessment was ever furnished to the park board by the relator, nor by any other of the several grantors. The answer admits that the park board expended, in September and October, 1884, $11,325.77 for grading Hennepin avenue, but alleges that such expenditure was without authority of law. That at the meeting of July 11, 1885, the park board passed a resolution designating Hennepin avenue, from its junction with Lyndale avenue to Lake street, as a parkway, taking the same under the control and jurisdiction of the board, and that the secretary of the board be authorized to request the city council to consent to such operation. That in 1885 the population tributary to Hennepin avenue was comparatively small, but that from time to time both population and traffic on Hennepin avenue has rapidly increased. That in 1887 the park board was advised that it had authority to limit and restrict heavy traffic on Hennepin avenue within certain limits, and passed a resolution to that effect, but that it was held by the municipal court and the supreme court that the park board had no power to exclude from Hennepin avenue any vehicle ordinarily used for travel which had a right to the use of the avenue prior to the organization of the park board. That owing to the increase in heavy traffic it has been impossible for the park board to construct a suitable roadway for such traffic out of the limited means at its command.

As I understand the answer, it is an attempt to justify the park board in disclaiming jurisdiction over Hennepin avenue as a parkway upon the ground that all of the proceedings taken with reference to the acquisition of property and the widening and improving of the street were from the beginning illegal and void, for the reason that the original act of 1883 did not authorize the park board to take possession of a city street and convert it into a parkway; that although the

act of 1885 conferred such authority upon the park board, and the city council consented thereto, yet by the same act the park board was authorized to vacate the parkway, and it was vacated by the resolution of December 5, 1905.

Let us first examine the question whether the proceedings with reference to acquiring Hennepin avenue and converting it into a parkway were void, as claimed. October 17, 1884, pursuant to chapter 281, p. 404, Sp. Laws 1883, the relator executed a deed by which he conveyed to the city of Minneapolis eleven feet in width across the front end of lot 2, block 5, Menage's addition to Minneapolis, together with all the right, title, and interest of the grantor to the land lying between such lot and the center line of Hennepin avenue. Notwithstanding the certain general assertions to the contrary in the answer, it is fairly admitted that the deed was accepted, with others of like import from other property owners, the land thereupon taken possession of by the board, extensive improvements made, and control and jurisdiction of the avenue assumed as a parkway and exercised for the period of twenty one years. Section 8 of the 1883 act provided that it should be lawful for the board to vacate and close up any and all roads and highways, excepting railroads, which might pass through, divide, or separate any land selected or operated by it for the purpose of parks, and no such road, highway, or railroad should be laid out through the parks, or any of them, except that the park board should lay out, construct, or consent thereto. The question having arisen whether the park board had exclusive jurisdiction of those streets which had been converted into parkways under the 1883 act, chapter 304, p. 546, Sp. Laws 1885 (section 1), was enacted for the purpose of clearing up the doubt:

> All parkways which have been or which may be acquired in or adjacent to the city of Minneapolis shall be subject to the control and government of the board of park commissioners of the said city in respect to the construction, maintenance, regulation and government thereof, and to the use, travel and traffic over and upon the same: Provided, that no street, alley or public place, or any part thereof, shall be made a parkway without the consent of the city council of said city.

In State v. Waddell, 49 Minn. 500, 52 N. W. 213, the court considered the question of jurisdiction, and it was stated in the opinion that while the park board might probably make a parkway of any established street, and might regulate the use of and travel upon such parkway, it could not vacate or close it, nor exclude from it vehicles which otherwise had a right to travel upon it. The act of 1885 was not considered.

From a consideration of section 1 of the 1885 act, it seems clear that the purpose of the legislature was to confirm and validate the prior appropriation by the park board of Hennepin avenue for the purposes of a parkway, if there was any doubt about its original authority. Under such circumstances the park board should not be heard at this time to assert want of authority. Having accepted the deeds of the property owners, taken possession of the land, converted the street into a parkway, and maintained it as such for twenty one years, the board, by its conduct, is estopped from asserting want of jurisdiction simply because the original act did not expressly state that streets might be converted into parkways. Of course, the consent of the city council was necessary; but, as I read the pleadings, the council did consent, even before the 1885 act went into effect. Under such circumstances it would be inequitable for the board, of its own motion, to raise such a question, when it could not be raised by anybody else. West Chicago v. City, 170 Ill. 618, 48 N. E. 1066; State v. School District No. 108, 85 Minn. 230, 88 N. W. 751; William Deering & Co. v. Peterson, 75 Minn. 118, 77 N. W. 568.

The next question is the effect of the resolution attempting to vacate or set aside the prior proceedings of the board. By an examination of the resolution in connection with the allegations of the answer, it is apparent that it was an attempt to undo all that the board had previously accomplished, and to abandon the street as a parkway upon the ground that it had proceeded without authority of law. In other words, the resolution was a mere declaration of the legal right to decline to exercise jurisdiction. The board did not proceed de novo to vacate a parkway, but having discovered that the burden of maintaining the avenue as a parkway was exceedingly heavy, conceived the idea of taking a back step, throwing the street over to the city and the burdens connected therewith. In my judgment, the resolution

was void. The respondent board assumes that all of the parties were placed in statu quo by this resolution, that the property deeded by the grantors reverted to them, and that the park board stepped out and the city stepped in, so far as the future control of Hennepin avenue is concerned; but, if such was not the case, then the grantors are relegated to an action for damages, and have no other remedy. In my opinion the land was deeded in fee simple absolute, and did not revert to the grantors. If this position is correct, then the board did not succeed in accomplishing what it undertook, viz., to place the parties in statu quo.

In Flaten v. City of Moorhead, 51 Minn. 518, 53 N. W. 807, 19 L. R. A. 195, immediately after the description, the deed contained this clause: "Said tract of land hereby conveyed to be forever held and used as a public park." The opinion states that the language must be considered in connection with the entire deed, in order to arrive, if possible, at the intention of the parties, and the decision was based upon the argument that such an improvement was of public interest. There was only a nominal consideration of one dollar, and the real consideration must have been the maintenance of a public park; hence the intention of the parties was arrived at, and it was held that an absolute title in fee did not pass to the village, so as to enable it to divert the property to other uses. In Soukup v. Topka, 54 Minn. 66, 55 N. W. 824, the following clause was inserted immediately after the description: (A strip of land 40x82 feet) "for a road to and from said premises first above described." The court held that the deed in terms conveyed, not an easement, but the land itself.

As to the deed in question, it is absolute in form, conveying all right, title, and interest of the grantors, and the only reference to the use of the land is in the following clause:

> This conveyance is made at the instance of the board of park commissioners of the city of Minneapolis, for parkway purposes, and it is expressly agreed and understood that, in addition to the consideration hereinbefore expressed, all other property now owned by said parties of the first part shall be forever exempted from all assessments for benefits appertaining to the

improvement of Hennepin avenue as a parkway under the act of the legislature constituting said board, as approved February 27, A. D. 1883.

This was not inserted as a limitation upon the fee, but is in the nature of an agreement that, in consideration of the conveyance of the land to the city, the other property of the grantors should be forever exempt from assessments for benefits, and was inserted pursuant to section 5 (page 409) of the 1883 act. Referring to that act, section 3 (page 405) authorizes the board of park commissioners to obtain title to land for the purpose of parks and parkways by agreement, devise, purchase, or lease. Section 4 provides that such title as may be acquired by condemnation shall be vested in fee in the city. Section 5 enables the board to purchase lands for parks and parkways, and contains a provision for exempting other lands of the grantor from assessment for benefits. Section 13 (page 413) reads:

> The lands which may be designated and obtained under the provisions of this act shall remain forever for parks and parkways for the use of all the inhabitants of the said city, subject to such rules and regulations as the board of park commissioners shall prescribe, said parks being subject to the lien of the bonds which may be issued for their purchase, which lien in case of nonpayment of said bonds at the maturity thereof, may be enforced by sales pursuant to any decree of a court of competent jurisdiction.

The deed in question was executed pursuant to all of these statutory provisions, and it was the intention of the parties to convey the land in fee simple absolute. The legislature itself, in 1887, construed the act of 1883, and treated such conveyances as absolute. By chapter 18, p. 454, Sp. Laws 1887, re-enacted in section 12, c. 30, p. 571, Sp. Laws 1889, all lands so acquired by the park board were authorized to be sold when abandoned for park purposes. There was no provision for the vacation of parkways under the 1883 act. Consequently, when the board accepted the conveyances of the relator and others similarly

situated, the vendors had a right to rely upon the express terms of that act as a basis for their contracts. Section 2 of the 1885 act reads:

> Sec. 2. The said board of park commissioners shall have and exercise all such powers 'and jurisdiction over and in relation to parkways as now is or hereafter may be conferred upon the city council in respect to the laying out, opening, vacation and discontinuance of streets, the grading, paving and curbing thereof, the construction of sidewalks and sewers, and the levying and collection of special assessments for the cost of the same.

The effect of this section was to transfer to the park board absolute control and jurisdiction over parkways to the same extent as enjoyed by the city council over streets. But no power is conferred on the board to sever a parkway from a street, abandon the one, and transfer the other to the city. I am not impressed with the argument that the board was authorized by section 2 to undo the very thing confirmed by section 1. The legislative expression in section 1 with reference to all existing parkways is in the nature of a curative act to carry into effect and place beyond all doubt the rights of the parties who acted in good faith upon the supposed adequacy of the law; and the intention contended for by respondent should not be imputed to the legislature, unless strictly required by the language. It appears to me that the two views are entirely inconsistent.

During the argument it was suggested (and that position is assumed in the majority opinion) that the relator, in his transactions with the park board and the city, acquired vested rights and that the board was bound to forever maintain Hennepin avenue as a parkway. It is unnecessary to consider that question, for it is not involved. The authority conferred upon the park board by the act of 1883 was no doubt subject to the reserved or implied power of the legislature to subsequently legislate upon the subject for the public good and to vacate parkways in whole or in part, under what is known as the police power, power of taxation, power of eminent domain, etc.; but I am satisfied that it was not the purpose of chapter 304, p. 546, Sp. Laws 1885, to enable the board to retrace its steps, sever the parkway from the street, and turn the street back to the city, leaving the several

grantors without a parkway, their property gone, and they without remedy, unless they resort to actions in damages.

While the answer sets up many facts and contains many assertions tending to deny the right of the relator to maintain this action, after all, it is apparent that the park board has no defense, and no ground for avoiding its duty with reference to Hennepin boulevard, if its position regarding the legality of the proceedings be unsound, and its attempt to vacate the parkway was void. Respondent has refused to exercise jurisdiction upon the ground that there never was such a thing as a legal parkway, or, if there was, it was legally vacated by the resolution of December 4, 1905. Mandamus is the proper remedy in such case. The relator is not required to specify in what particular the board shall expend the money or make improvements. The information does not seek to infringe upon any of the discretionary powers of the board. If Hennepin boulevard is a parkway, then any citizen of Minneapolis might invoke this remedy to compel the officers of the board to assume and perform their official duty with respect thereto. State v. Weld, 39 Minn. 426, 40 N. W. 561; State v. Archibald, 43 Minn. 328, 45 N. W. 606.

For these reasons, the demurrer to the answer should have been sustained.