**The Equitable Powder Manufacturing Company, Appellant, v. Cleveland, Cincinnati, Chicago & St. Louis Railroad Company et al., Appellees.**

1. EVIDENCE—*when view of premises properly allowed.* Held, in this case, which was an action to recover damages for the alleged wrongful flooding of the premises of the plaintiff, that it was proper for the court, at the request of all parties, to permit a view of the premises in question.

2. APPEALS AND ERRORS—*when assignment deemed waived.* Questions not raised in the original brief are deemed waived and will not be considered when raised for the first time in the reply brief.

3. TORTS—*when joint action against several tort-feasors cannot be maintained for wrongfully flooding.* A joint action cannot be maintained against several tort-feasors for the flooding of the property of the plaintiff where each of such tort-feasors has acted in doing the work in question independently of each other.

Action in case. Appeal from the Circuit Court of Madison county; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed April 9, 1910.

C. H. BURTON, JOHN J. BRENHOLT and KINEALY & KINEALY, for appellant.

WISE & KEEFE, SWEENEY & WALKER and WARNOCK, WILLIAMSON & BURROUGHS, for appellees.

MR. JUSTICE SHIRLEY delivered the opinion of the court.

This was a suit by appellant against the Cleveland, Cincinnati, Chicago & St. Louis Railroad Company, hereinafter called C. C. C. & St. L.; Chicago, Burlington and Quincy Railroad Company, hereinafter called C. B. & Q.; Chicago, Burlington and Quincy Railway Company and the Chicago and Alton Railroad Company, hereinafter called the C. & A., appellees, to recover damages for the alleged wrongful flooding of the premises of appellant.

The declaration consisting of several counts charged in various ways in substance, that appellant was the owner and possessed of a tract of land upon which it had buildings and improvements where it was engaged in the manufacture of powder and other goods and wares, a large quantity of which goods were then on hand; that appellees were possessed of certain railroad rights of way along and near the premises of appellant on which were constructed solid embankments composed of dirt, cinders, rock and other like material upon which they had tracks and over which they were operating trains.

It was further averred the railroad of the first

Equitable Powder Mfg. Co. v. C., C., C. & St. L. R. Co., 155 Ill. App. 265.

named appellee extended from the southwest to the northeast, south and east of appellant's premises crossing the east fork of Wood river near said premises and several times northeast thereof and was also possessed of and operating another railroad embankment across Wood river a short distance west and south of said premises; that the appellees the Chicago, Burlington and Quincy Railroad Company and Railway Company of the same name were possessed of and operating a railroad which crossed Wood river a short distance west and south of said premises, and that the appellee Chicago and Alton Railroad Company was possessed of and operating another railroad across Wood river and the low lands adjoining the same a short distance west of said premises, and that all said railroads intersected and crossed the valley and natural watercourses there, of which Wood river was the main channel and waterway.

It was averred the premises of appellant were located near the following natural watercourses: Wood river, the west and east forks of Wood river and tributaries all of which drained a large territory and carried off in times of storms large quantities of water in the natural course of drainage of the surrounding country which said waters in a state of nature flowed along various watercourses and natural depressions and emptied by way of Wood river into the Mississippi river south and west of the premises of appellant.

It was further averred that said railroad embankments were not constructed so as to provide sufficient waterways across and under them where they crossed said natural watercourses to accommodate the flood waters which in times of heavy rains overflowed Wood river and its forks and tributaries and the low lands near the same and the natural depressions which were watercourses in times of flood; that the bridges of appellees over Wood river, its forks and tributaries, were so negligently constructed by piling and other material placed in and near the channels that the natural flow

of the waters was by such means and by said embankments so obstructed that in times of floods and freshets the waters were held back and prevented from flowing in their natural course towards the Mississippi river by means of which in June, 1902, and again in October, 1905, during certain heavy rainstorms and floods, the premises of appellant were overflowed, the buildings thereon flooded, and a large amount of powder and other personal property destroyed and damaged.

Pleas were filed to the several counts of the declaration but the evidence was confined to the issues made by the plea of the general issue. A jury was waived and in addition to hearing the testimony the trial judge viewed the premises and found the appellees not guilty. Judgment was rendered against appellant for costs from which it appealed.

The argument in this court is confined to the alleged errors of the trial court in finding contrary to the law and the evidence; in refusing correct propositions of law offered by appellant, and in holding incorrect propositions of law offered by appellees.

The transcript of the evidence embodied in this record contains more than fifteen hundred pages. Substantially all of it has relation to Wood river and its tributaries and water sheds, the history of its floods and the topography of its territory, including that also which is occupied by appellant's property, and the embankments, bridges and culverts of appellees, and upon this feature of the case there is no dispute.

Wood river is formed by the confluence of two streams called the east and west forks, which meet about fourteen hundred feet southwest of appellant's plant and buildings which are located between the forks. The east fork extends northeast some fourteen miles, and the west fork extends in a northerly direction about the same distance. Each has a drainage area about five miles wide and at times of heavy rainfall both forks are subject to rapid overflow which floods the valleys of both forks and the low grounds

about the head of Wood river. The premises of appellant are located on low ground and in June, 1902, and again in October, 1905, after unusual heavy falls of rain, said by old residents in the vicinity to have been the heaviest they had ever witnessed, the premises of appellant were flooded and the water rose several inches in their buildings. These are the only occasions of flooding of which appellant makes complaint. North and east of appellant's premises and near by, are high hills. Along the south side of its premises is the track and embankment of the appellee the C. C. C. & St. L. Railroad which runs in a southwesterly direction. West of appellant's premises are the tracks and embankments of first the appellee C. B. & Q. and just west of it the C. & A. Both these tracks are near together and the C. B. & Q. intersects the C. C. C. & St. L. tracks about one-fourth of a mile south of appellant's plant. The testimony shows these several tracks and the hills form a triangle inside of which is appellant's plant. The C. C. C. & St. L. has a bridge over the east fork of Wood river about seven hundred feet from some of appellant's buildings and only a short distance from where this fork joins the west fork. The C. B. & Q. and C. & A. have bridges over Wood river about one thousand feet south of where the two forks of the river come together. In addition to the bridge over Wood river, the C. & A. has two other openings in its embankment, one where a highway passes and one where the C. C. C. & St. L. line to Alton passes.

The testimony on behalf of appellant showed facts and circumstances from which it could be inferred that the embankments complained of caused more water to accumulate upon appellant's premises than would have accumulated if the embankments had not been there or if there had been more openings to permit the flow of the water; but it is not clear that the floods complained of would not have resulted in as much damage to appellant if there had been more openings. The

location of appellant's plant exposes it to the flood waters that come down both forks of Wood river, the channel of which as shown by some of the testimony is not large enough to accommodate the rapid floods at times of heavy rainfall, coming down from the water sheds and tributaries of the forks. The physical features of the forks and their water sheds show that water falling upon them sheds rapidly and when heavy rains fall, water soon gets out of the channels. Both forks being about the same length and fall, the waters from each reach the main stream Wood river about the same time, and at times the water comes in such volume the main stream cannot accommodate it, and it spreads out over the low lands in the vicinity where appellant's plant is located. The testimony shows the ground to have been overflowed at times before the railroad embankments were there in the condition they are now.

The appellee C. C. C. & St. L. Railroad, of which appellant complains, formerly had considerable trestle work which was taken out and replaced by solid embankments. It is claimed that this holds back the water south of its tracks until the embankment breaks as it did in the floods of 1902 and 1905 and thereby the water is cast upon appellant's premises so suddenly and in such great volume as materially to increase the quantity.

The appellee claims that the embankments held the water back from appellant's plant until the water reached the top of its embankment and flowed over it and gradually washed it and was more of a protection than otherwise. It is also claimed appellant's property was covered with water before the water came over appellee's embankments, and there is evidence in the record in support of all these claims. There is testimony that the C. B. & Q. bridge over Wood river is of ample size and that its embankments south of the bridge and west of appellant's plant is low and at the

time of the floods complained of, its tracks for several hundred feet were several feet under water.

We have examined the conditions as they appear from the evidence pertaining to the embankment, bridges and openings of the C. & A. cut off and the depth and flow of the water on both sides of its tracks during the floods and what if any damages resulted to appellant from such embankments. At the conclusion of the evidence the trial judge at the request of all parties and in company with the engineers and attorneys for all parties viewed the premises of the appellant, also the embankments, bridges and surrounding territory. It was a case where the evidence was such that the view was important in furnishing the court information it was impossible to get from the oral testimony and the plats, maps and photographs in evidence. While such view was not evidence, it was of peculiar value to see the topography and physical features of the territory and the premises of all the parties, and it would enable the court to much better understand and apply the evidence to the issues involved, and this he doubtless did in making up his finding.

After a consideration of all the evidence we are of opinion the finding is not so contrary to the evidence upon the question of the alleged negligent acts of appellees and each of them that it should be disturbed on that ground.

The court held as law for appellees the following proposition:

"The court holds the law to be that under the averments of plaintiff's declaration and the evidence offered in support thereof the plaintiff is not entitled to recover and judgment should be rendered in favor of the defendants."

The alleged error in holding this proposition is not argued in appellant's brief nor in the brief of appellees. Appellant first questions the proposition in its reply brief. The rule is that when questions are

not raised in the original brief they are deemed to be waived and will not be considered when raised for the first time in a reply brief.    Town of Big Grove v. Town of Fox, 89 Ill. App. 87; Inter State Building and Loan Assn. v. Ayers, 71 Ill. App. 529; Dean v. Plane et al., 96 Ill. App. 428; West Chicago Park Comrs. v. City of Chicago, 170 Ill. 618.

Appellant asked the court to hold the following proposition of law which was refused:

"If the court finds from a preponderance of the evidence that the defendants are guilty of the negligence charged in either count of plaintiff's declaration, and that the said negligence materially contributed to and was the proximate cause of the damages suffered by plaintiff, then it is the law and the court holds the defendants guilty."

To have held this proposition would have necessarily held in effect the defendants liable as joint tort-feasors.

It is sometimes a question of much difficulty to determine whether there is a joint liability where injury results from the several acts committed by others, and there is much apparent confusion in the considerable number of cases to be found where the courts have had the question to consider, and it may be said many of them seem out of harmony.

It is argued this is a case where "appellant's loss flowed not from the combined result of each appellee's act, but was the result of the combined acts of appellees." We cannot agree to this conclusion. The evidence shows that each of the appellees in performing the acts complained of acted separately for itself and independently of the others and without concert of action. There could be no loss result to appellant except as a result, not from the combined acts, but from the separate and independent acts of appellees which caused the loss claimed by appellant.

We cannot attempt to cite and comment upon the large number of cases which discuss the question of

liability of joint tort-feasors but it will be found that in most, if not all the cases where they have been held liable, have been cases where the injury and no part of the injury would have resulted but for the act of the several defendants held to be liable. While the question of such liability has been considered by the courts of last resort in many cases in this state, we know of no case where the question of the liability of persons whose several independent acts result in the accumulation of water causing an injury has been decided. Such decisions, however, may be found in the courts of other states.

"A joint action cannot be maintained against the owners of two dams for the flowing of lands by the back water therefrom where they were constructed independently of each other and at different times in different channels of the same river." Lull v. Fox & W. Improvement Co., 19 Wis. 112. To the same effect are the following cases: Ames v. Dorset Marble Co., 64 Vt. 10; Miller v. Highland Ditch Co., 87 Cal. 430; Blaisdell v. Stephens, 14 Nev. 17; Chipman v. Palmer, 77 N. Y. 51; Martinowsky v. Hannibal, 35 Mo. App. 70.

The appellees not being jointly liable, the court was warranted in refusing to hold the proposition of law asked by appellant.

We are also of opinion that the proposition should have included all the elements necessary to recover. It was a disputed question of fact whether the alleged injury was attributable to the act of God and also whether the negligence of the appellant contributed to the injury. There was evidence offered to prove and disprove both these elements of the case. The proposition not embracing these elements also warranted its refusal. After a careful examination and consideration of the record we conclude the finding and judgment of the trial court was correct and it is accordingly affirmed.

*Affirmed.*