## MARY H. HELLER v. THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY.

1. HIGHWAYS; *Power of Legislature.* The legislature, as the representative of the public, has plenary power over streets and highways, and as a general rule, full discretion as to opening, improving and vacating the same.

2. EQUITY *Will Interfere, When.* While equity will interfere in some cases at the instance of private real-estate owners to restrain the attempted vacation of a road or street, yet it will interfere only when such owners have a special interest therein, and their property would be directly injured by the vacation.

3. INJUNCTION, *Not Maintained, When.* Where a part of a street is attempted to be vacated and the owners of lots abutting thereon do not complain, *held*, that the owner of a lot in another block, in front of whose lot the street is left its full width, and access to whose lot is in no respect disturbed or abridged, may not maintain an action to restrain the vacation, although thereby the general course of travel will probably be thrown on some other street and no longer pass in front of said lot-owner's property.

28 625
40 307
40 309
28 625
41 195
41 379
42 236
28 625
45 269
28 625
51 439
51 602
28 625
54 655
28 625
57 70
28 625
59 420
28 625
f71 346

*Error from Shawnee District Court.*

ACTION brought by *Mary H. Heller* against the *Railroad Company*, to restrain its occupation of certain vacated ground, and to have the same adjudged a public thoroughfare. At

40 — 28 KAS.

the April Term, 1882, the district court refused to grant plaintiff a temporary injunction in such action, which ruling she brings to this court. The opinion states the facts.

*R. E. Heller*, for plaintiff in error.

*Geo. R. Peck*, and *W. C. Campbell*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: The facts in this case are as follows: Plaintiff in error (plaintiff below) was the owner of lots 211, 213, 215, in Crane's addition to the city of Topeka—an addition duly platted in the year 1863. These lots are situated on the southwest corner of Adams street and First avenue east, the former street running north and south, and the latter east and west, the width of the former being 100 feet, and of the latter 130 feet. These lots face on First avenue east, and are each 25x130 feet. On the 3d of September, 1881, the council of the city of Topeka passed an ordinance vacating the portion of First avenue east lying east of Adams street, and also the east half of Adams street lying north of the center of First avenue east. This ordinance was passed at the instance of the defendant, which owned or claimed to own the lots adjacent to the vacated territory. Immediately thereafter the defendant proceeded to occupy this vacated ground, and to commence laying tracks and erecting buildings thereon. Whereupon plaintiff brought this action to restrain such occupation by the defendant, and to have the ground adjudged still a public thoroughfare and left free to public travel. The temporary injunction asked was refused, and from the order of the district court refusing such temporary injunction, plaintiff in error brings the case to this court. She claims, first, that the city council has no power to vacate a street; second, that if it has the power under any circumstances, the streets in question cannot be vacated until she has received compensation for the injuries done to her property by such vacation; and third, the plaintiff, as the beneficiary of the trust created by the dedication of said streets and by her

purchase of said lots after such dedication, has a vested interest in the trust which no legislature can destroy. It will be observed that no portion of First avenue east, or of Adams street in front or on the side of plaintiff's lots, is covered by the vacating ordinance. Both streets to their full width are here left untouched; so that plaintiff has not only access to her lots, but the use of the full width of either street for the purposes of such access. But as further facts for the purpose of showing her special injury and her right to maintain this action, plaintiff alleges that she purchased these lots after the dedication of the addition, and thus possesses all the rights to the free use of all the streets therein, given by virtue of the filing of the plat of the addition and the dedication of the streets. Second, that after her purchase she erected on the lots buildings of the value of $1,000, that such buildings had for the past two years been occupied for business purposes, to wit, the grocery business; that at the time of the purchase, and since up to the commencement of this action, there was more travel on said First avenue east by said lots than on any other street in that part of the city. Third, that between said First avenue east and the Kansas river there was but one street running east and west, to wit, Crane street; and that about two years prior to the passage of this ordinance the city council, at the instance of the defendant, had vacated Crane street, and the defendant had closed the same to public travel; and that now if First avenue east be closed, as is attempted, all approach and travel from east of the city will be thrown upon streets south of plaintiff's lots; that there is a large and increasing amount of travel which will thus be diverted from plaintiff's property, and it will cease to be of any value for business purposes, and of small value for residence purposes. Upon these facts, did the court err in refusing a temporary injunction? We think not, and mainly for the reason that the plaintiff has shown no such special interest as entitles her to challenge the action of the municipal authorities. We suppose it will not be doubted that, in the absence of constitutional limitations, the

legislature has the power, either directly or by any municipal corporation, to vacate a road or street. Dillon, in his work on Municipal Corporations, § 527, says: "The plenary power of the legislature over streets and highways is such that it is in the absence of special constitutional restriction sufficient to vacate or discontinue them, or invest municipal corporations with this authority;" and cites in support of this several authorities. It is true there may be limitations on this power. Special rights may have been vested and special interests created, which in some cases may place a limit upon its exercise, and in such cases courts of equity will interfere at the instance of any party so interested. But still, the general power unquestionably exists, and the statutes of every state contain provisions for vacating roads and streets. Now with the exercise of this power in any particular instance no one may interfere unless he has a special and direct interest. The fact that as an indirect consequence injuries may result gives no cause for interference. Only when the injury is direct, when the individual suffers some special wrong, something different from that experienced by other members of the community, may the party injured challenge the action. It is not always easy to draw the dividing-line between those cases in which the injury is direct and special, and those in which it is indirect and general. No one would for a moment suppose in the case at bar that a citizen of Lawrence, owning no property in Topeka, could challenge this action, whether right or wrong. It is a matter which does not concern him. Equally plain is it, that one in the remote part of the city of Topeka has no such interest as justifies his interference; but as we come closer to the vacated streets the question becomes more doubtful. Where a party owns a lot which abuts on that portion of the street vacated so that access to the lot is shut off, it is clear that the lot-owner is directly injured, and may properly challenge the action. The closing up of access to the lot is the direct result of the vacating of the street, and he, by the loss of access to his lot, suffers an injury which is not common to the public; but in

the case at bar, access to plaintiff's lots is in no manner inter-
fered with. The full width of the street in front and on
the side is free and undisturbed, and the only real complaint
is, that by the vacating of the street away from her lots the
course of travel is changed. But this is only an indirect re-
sult. There is nothing to prevent travel from coming by her
lots if the travelers desire it. The way to the heart of the
city by her lots is a little more remote than it was before, but
still free passage is open to all who wish to pass thereby.
No one is compelled to stay away. Access to the lots is the
same that it was before, so that the injury is only the indi-
rect result of the action complained of, and it is an injury
which, if it exists at all, is sustained by all other lots along
the street west of the parts vacated. Travel by those lots
may be diminished, travel on streets south may be increased,
and to that extent property on such southern streets may be
benefited thereby. The same result would follow if some
other avenue of approach to the city were specially im-
proved. Public travel naturally seeks that which is the best
route, but surely that thus the tendency of travel in front of
her lots was diverted would give her no cause of action.
The benefits which come and go from the changing currents
of travel are not matters in respect to which any individual
has any vested right against the judgment of the public
authorities. In the case of *Smith v. City of Boston*, 7 Cush.
254, Chief Justice Shaw thus laid down the law:

"The damage must be the direct and immediate conse-
quence of the act complained of, and remote and contingent
damages are not recoverable. The petitioner has free access
to all his lots by public streets. The burden of his complaint
is, that in going to some of his houses in some direction he
may be obliged to go further than he otherwise would. The
inconvenience was not such an injury done him in his prop-
erty as to entitle him to damage."

And further, at the close of the opinion:

"We do not mean to be understood as laying down a univer-
sal rule that in no case can a man have damages for the dis-
continuance of a highway unless his land bounds upon it;

although as applicable to city streets intersecting each other at short distances, it is an equitable rule. A man may have a farm, store, mill or wharf not bounding on a street, but communicating with it by a private way, so situated that he has no access to his property but by the public way. If this is discontinued, he must lose the benefit of his estate, or open a way at his own expense, which might be a direct and tangible damage consequent upon the discontinuance of the public way."

See also *Gray v. Iowa Land Co.*, 26 Iowa, 389; *People v. Kerr*, 27 N. Y. 188; *Coster v. Mayor, &c.*, 43 N. Y. 414, in which the court of appeals uses this language:

"And if in the exercise of this right [*i. e.*, the right to vacate] a street be discontinued, and the value of the lands abutting on the other parts of the street and neighboring streets is lessened, it is not such an injury to the owner as to entitle him to damages."

Also, *Fearing v. Erwin*, 55 N. Y. 486, in which it is said:

"Though one public way to property is closed, if there is another left, the property-owner sustains no actionable damages."

Also, *Castle v. Berkshire*, 11 Gray, 26; *Ingram v. Rld. Co.*, 38 Iowa, 669; *Burr v. Oskaloosa*, 45 Iowa, 275; *Petition of Concord*, 50 N. H. 530; *Lutterloh v. Mayor, &c.*, 15 Fla. 306.

Counsel for plaintiff refer to the case of the *Comm'rs of Franklin County v. Lathrop*, 9 Kas. 453, as sustaining the plaintiff's right of action, but the difference between the two cases is marked. In that case it appeared that the original proprietors had dedicated a block of ground in the city of Ottawa to the public for the use of a court-house square; thereafter the plaintiffs purchased lots facing on such public square, and improved them. Obviously they had a special interest in having such public square remain open, and they would receive a direct injury if the block was abandoned to private possession and use; hence, we sustained their action to enjoin such private possession and use. But we did not decide that any lot-owner in the city of Ottawa, irrespective of his special and direct interest, could challenge the attempted action

of the public authorities, or that the legislature, as the representative of the public, could not abandon such public use prior to the vesting of any private and special interest.

Again, it may be remarked that while the legislature as the general representative of the public has equal control of all public properties, yet in the very nature of things, and owing to the intrinsic difference between public squares and highways, the greater number of the latter, the greater facility in multiplying them, and the purposes to be attained by them, there is perhaps a larger scope for legislative discretion in opening, managing and vacating them. Further, it may be noticed that at the time of the laying-out and platting of this addition, there was a special statute in force providing for the vacating of streets, (ch. 108, Laws of 1862,) while no such statute existed in reference to public squares and other public grounds; so that parties must be held to have platted and purchased with reference to an existing assertion of the legislative control over them. Further than that, in one form or another, the statutes have contained ever since, legislative assertion of control over highways to the fullest extent. We think therefore there is nothing in that case inconsistent with the views herein expressed, and for the reasons heretofore given, we think that the judgment of the district court is correct, and must be affirmed; and it is so ordered.

All the Justices concurring.