## THE CITY OF LEAVENWORTH *et al.* v. JOHN C. DOUGLASS.

### No. 11002.

1. UNION DEPOT NOT A NUISANCE—*though it closes street, where constructed under valid ordinance so authorizing.* The location of union depots and the closing and vacation of streets in cities are within legislative control; and where, in pursuance of legislative authority, a city of the first class provided for the location of a union depot over a public street, and at the same time closed and vacated that portion of the street upon which the union depot was to be constructed, stipulating and requiring that the union depot company should purchase a strip of ground a few feet away and dedicate it as a public street, as a substitute for the one closed and vacated, and the company then proceeded to perform the conditions, and to erect the union depot in accordance with the authority conferred and the requirements made, the union depot so erected upon and over the vacated street, cannot be regarded as a nuisance subject to be enjoined or abated at the suit of an owner of property situate in the vicinity of such union depot.

2. LACHES SHOWN BY PETITION—*when sufficient to bar relief, may be reached by demurrer.* Where it appears from the allegations of the plaintiff's petition that the remedy sought is barred by lapse of time, or that by reason of his laches he is not entitled to relief, the defendant may by demurrer avail himself of the objection.

Error from the Court of Appeals, Northern Department. Opinion filed May 7, 1898. *Reversed.*

*J. T. O'Keefe, J. H. Wendorff,* and *Safford & Williams,* for plaintiffs in error.

*John C. Douglass,* for defendant in error.

JOHNSTON, J. John C. Douglass, who owned several lots in the city of Leavenworth, brought this action to prevent the completion of a union depot building and other improvements in connection therewith, which he alleged the Leavenworth Depot and Railroad Company was erecting and had erected at a

certain point within the City; and he asked to have the same abated as a nuisance. From the description given, it appears that the structure and improvements are extensive, and necessarily must have cost a large sum of money. The location of the union depot and the erection of the same was authorized by the City, through an ordinance passed for that purpose. It seems that more than a year elapsed from the time the first steps were taken toward the construction of the union depot before complaint was made or any action was begun by Douglass. In his petition he alleged that the depot building and improvements obstructed certain streets and the levee on the Missouri River, preventing him from using the streets and levee, and greatly injuring his property and buildings fronting thereon. He described several lots owned by him in different parts of the city, but all except one of them are so remote from the union depot that he cannot be said to suffer any special or particular injury beyond that suffered by the public generally. There is a serious question whether the lot referred to, to wit: Lot 3 in block 9, should be excepted from the number, or whether it can be said that the plaintiff suffers a special and peculiar injury distinct from that sustained by the public at large.

In pursuance of the ordinance, the union depot was located on a part of block 2, and on that part of Delaware Street north of block 2 and the south lot of block 3. In this way, the east end of Delaware Street, or that portion which extends from Main to Water Street, was occupied by the union depot building. In addition to this, the Company was authorized to occupy, and to lay tracks on and use portions of Water, Main, Cherokee and Choctaw streets. These privileges were granted upon the conditions that the Company should first acquire and dedicate for public use as a

27—59 KAN.

street a lot in block 3, immediately north of that designated for the union depot grounds. They were also required to build a retaining-wall parallel with the river, to plank and maintain the streets, occupied by railroad tracks, in such condition that the passage of vehicles along and past them should not be obstructed, and the eastern end of Cherokee Street, which runs parallel with Delaware Street, should always be kept open and unobstructed for access to the levee and the Missouri River. There was a further provision that all the railroad companies which had roads in the city should have the use of the depot and the connecting tracks.

The improvements appear to have been made in accordance with the ordinance, and a new street was established between Main and Water Streets. Instead of Delaware Street extending between block 2 and block 3, as formerly, the new street was dedicated and established about twenty-five feet further north. In effect, the new street is an extension of Delaware street, and the only differences are that it is located about twenty-five feet further north and is only twenty-five feet wide. Lot 9 in block 3, owned by Douglass, extends from Main to Water Street, with two fronts, one on Main and the other on Water Street. It thus appears that, while a portion of Delaware Street south of block 3 was practically vacated by the City and is now occupied by the union depot building, another street has been provided, on the south end of the block, which affords access to Water Street and around to the Douglass lot on that street.

We learn from the petition and the plat attached thereto that while Water Street had been partly occupied by tracks and narrowed by the public improvements, Douglass still has ingress to and egress from his lot through the street. If Water Street had been en-

tirely closed, there would have still been unobstructed access to the property by Main Street; and if this were an action to recover damages, it would be an open question whether there was a liability. It has been ruled that before the owner of lots abutting on a street whereon railroad tracks have been laid and are in use by authority of the city council can recover damages, there must be such a practical obstruction of the street in front of the lots that the owner is denied ingress to and egress from them. The fact that the street or alley may be narrowed by the structure or made less convenient, or that the property may be made less attractive or desirable, will create no liability against the company, if the owner's special use and right of entering and leaving his property has not been unreasonably abridged. *A. & N. Rld. Co. v. Garside,* 10 Kan. 552; *C. B. U. P. Rld. Co. v. Andrews,* 30 id. 590; *O. O. C. & C. G. Rld. Co. v. Larson,* 40 id. 301; *K. N. & D. Rly. Co. v. Cuykendall,* 42 id. 234; *C. K. & W. Rld. Co. v. Inv. Co.,* 51 id. 600.

This is not an action for the recovery of damages, and we are not called upon to determine whether in any event the plaintiff below can recover damages by reason of the occupation of the streets by the Railroad Company. Instead of damages, he asks that the buildings and improvements, extensive and costly as they are, be declared a nuisance and abated. A railroad company cannot block up a street, nor deprive an owner of access to his property, without incurring liability; but even a right to damages does not necessarily entitle the party to the abatement of a structure authorized and built as was the one in question.

1. Union depot not a nuisance.

It appears to be the theory of the defendant in error that, because the building is over and upon Delaware Street, or on ground that formerly constituted a part

of that street, it constitutes a nuisance, and may therefore be enjoined and abated. The difficulty with this contention is that the ground so occupied is not a street. The ordinance locating and authorizing the construction of the union depot and providing for the dedication of a new street, is in effect a vacation of that part of Delaware Street which is occupied by the union depot. "The Legislature, as the representative of the public, has plenary power over streets and highways, and as a general rule full discretion as to opening, improving and vacating the same." *Heller v. A. T. & S. F. Rld. Co.*, 28 Kan. 625. This power may be exercised directly by the Legislature, or indirectly by a municipal corporation; and the Legislature has authorized cities of the class to which Leavenworth belongs "to close and vacate any street or alley, or any portion thereof." Gen. Stat. 1897, ch. 32, § 88, clause 42. In the twentieth clause of the same section, cities are invested with authority to regulate depots and depot-grounds and to provide for and regulate the construction and passage of railroads over the streets and public grounds of the city. Here, then, we have a public street vacated so that it may be devoted to a public improvement; and all done by express legislative authority. The location of a depot is so far a matter of public interest that private property may be condemned or appropriated therefor. Gen. Stat. 1897, ch. 32, § 102. And although the topography of the city and the routes by which the several railroads therein enter the city are not shown, it must be presumed that the Union Depot was located for the convenience and benefit of the public.

The vacation of the street and the location and construction of the Union Depot were within legislative control, and, all having been done within the authority and requirements of the law, the buildings cannot be

regarded as either a public or a private nuisance. 16 Am. & Eng. Encyc. of Law, 1000.   To accommodate the public the street was shifted a few feet further to the north, and, although narrowed to some extent, it affords access around the block to the property of plaintiff in error ; and even if it were a public nuisance, it is not easily seen how he suffers a special injury beyond that which is common to the public at large.

If there had been irregularities in the exercise of the authority or in carrying it out, the laches of the plaintiff below would be a strong reason for denying him the relief which he asks.   From the record it appears that the ordinance was passed June 28, 1886, and the original petition in this case was not filed until June 30, 1887.   From the averments of the petition it is shown that excavations were made and large retaining-walls built, and further that the depot building was largely constructed.   It thus appears that the work had been in progress for a long time, and large sums of money expended, without reference or complaint by the plaintiff below.   He could have instituted a proceeding when the ordinance was passed and before the Depot Company had made great expenditures upon the improvements.   To allow him to sit silent for a year, while this expensive work was going on, and then, without giving explanation or reason, apply for and obtain injunction or abatement, would be inequitable and unjust.   Courts of equity may, and frequently do, refuse relief after undue and unexplained delay, and when injustice would be done by granting the relief asked.   *Abraham v. Ordway*, 158 U. S. 416.

The objection that laches is not available as a defense when raised on demurrer cannot be sustained. It has been held that " where it appears by the com-

2. Laches sufficient to bar relief reached, how.

plainant's bill that the remedy is barred by lapse of time, or that by reason of his laches he is not entitled to relief, the defendant may by demurrer avail himself of the objection." *National Bank v. Carpenter*, 101 U. S. 567; *Speidel v. Henrici*, 120 U. S. 387.

We think the plaintiff below failed to allege any ground for injunction or abatement, and therefore the judgment of the Court of Appeals will be reversed and the judgment of the District Court will be affirmed.