Z. T. PERKINS, *Appellee*, V. ALFRED WESTON & COMPANY et al., (ALFRED WESTON & COMPANY, *Appellants*).

No. 17,590.

SYLLABUS BY THE COURT.

CITY ORDINANCE—*Vacation of Street—Acquiescence—Estoppel.* Where two parties have in succession secured from a city the benefits of ordinances vacating parts of the same street, upon the same terms, and each has erected a warehouse upon his own lot extending upon ground within the limits of the vacated street, and they have entered into a contract with each other respecting a right of way for one of the parties over the property of the other, in lieu of rights formerly enjoyed in the street, the remedy of one of the parties for an obstruction of the way so granted is an enforcement of the contract, and not an annulment of the ordinance vacating that part of the street.

Appeal from Wyandotte court of common pleas. Opinion filed July 6, 1912. Reversed.

*George W. Littick*, of Kansas City, for the appellants.

*George R. Allen*, and *Thomas A. Pollock*, both of Kansas City, for the appellee.

The opinion of the court was delivered by

BENSON, J.: This is an action to vacate a city ordinance and to enjoin the obstruction of a street. Third street in Kansas City extends north and south. Ferry street, next east of Third street, runs in a diagonal course so that the lots situated between these streets diminish in length from the north to the south as Ferry street approaches Third street. Armstrong avenue extended east and west from Third street to Ferry street before that part was vacated. The Missouri Pacific railway occupies a right of way parallel with and adjoining Ferry street on the east. The appellee owns lot six, which is forty-four feet in width and extends from Third street to Ferry street and abutted on the south on Armstrong avenue before the vacation referred to. The appellants are the owners of lots four and five, situated immediately north of lot six, and also extending from Third street to Ferry street. On December 16, 1896, the city adopted ordinances vacating Armstrong avenue between Third street and Ferry street and that part of Ferry street south of the north line of lot six. These ordinances contained the following section:

"SECTION 2. That this ordinance shall become null and void unless Z. T. Perkins puts up a grain store and warehouse and other improvements at the cost of $3,000.00, inside of nine months from the passage of this ordinance, on or adjacent to the property vacated."

The part of the avenue so vacated was steep and unfit for travel.

Upon the adoption of these ordinances appellee erected a warehouse on lot six and the ground south of it which had been a part of the avenue, and is now designated as lot 31. The warehouse is one story in height at its west frontage on Third street, but because of a declivity the ground floor on the east front is twenty feet below that on Third street.

Perkins v. Weston.

From 1897 to 1904 the appellants occupied the appellee's warehouse as tenants, and carried on their business there. In May, 1904, the city adopted an ordinance at their instance vacating Ferry street from the north line of lot four (the north line of appellants' property) south to the line of lot six, thus extending the former vacation to cover the east front of the property of appellants. The last ordinance contained a provision that the appellants should erect a warehouse at a cost not less than $5000, the same as the provision in the former ordinance except as to the amount.

After the first vacation ordinances were passed the Missouri Pacific Railway Company entered into an agreement with the appellee by which it released any claim for damages caused by the vacation of Ferry street and agreed to release all its rights in the vacated tract that would revert to him as the owner of adjoining lot six. Long before that agreement was made the city had granted to the railway company the right of way to lay its tracks along and across Ferry street. A switch track was laid to facilitate business at the appellants' warehouse after it was constructed.

The effect of the several ordinances referred to, if valid, was to vacate Ferry street south of the north line of lot four, east of the lots of both of the parties, and Armstrong avenue south of appellee's lot. Each party claimed to own by reversion the lands to the center of the vacated streets adjoining their respective lots.

After the ordinance was passed vacating Ferry street east of appellants' lots four and five, they erected a warehouse and elevator on these lots, a corner of which extended eight or ten feet over and upon ground included in Ferry street before the vacation.

On September 23, 1904, the appellee, with knowledge of the vacation of Ferry street opposite the appellants' property, entered into an agreement with them in writing whereby appellee consented that the railway

company should construct a switch starting from the one already constructed to his lot six, and to run partially across his land to lots four and five occupied by appellants. The appellants agreed to pay $12.50 per year in consideration of this consent, and agreed further:

"To allow said party of the first part access from the rear of his property across their said lots in order to reach Second Street, and thus have access to Minnesota Ave. Said second parties also agree that in the use of said switch they will not allow cars to be so placed as to prevent access at all times by the party of the first part from his lots to Minnesota Ave. and said right-of-way is not to be so obstructed as to prevent the passage of teams. Said second parties also agree to construct and maintain a suitable crossing across the said switch tracks. Said parties of the second part further agree that they will not allow cars to stand on switch upon the land owned by said party of the first part."

Soon after the switch connections had been made, on account of some objections made by the appellee the switch track was removed to the east of the center line of old Ferry street. It has been maintained and used there ever since and has been extended to a business establishment farther north on Ferry street. The appellants repaired and improved the way at considerable expense, and it is used by both parties in carrying on business at their respective warehouses. The appellants have constructed an underground conveyor to carry grain from the switch track across the way about twenty feet into their building, raising the surface four or five feet for this purpose. The grain is received in a box at the side of the track, connecting with the conveyor, leaving the way from the box to appellants' building twelve to sixteen feet in width. Ferry street was thirty feet wide. The payments for the privilege of switch connections were made for two years, but the last payment was returned.

The appellee alleges that the ordinance vacating Ferry street north of his property was enacted for the private use and benefit of the appellants, regardless of the rights of the appellee and others, without providing for or paying resulting damages, and is void for these reasons, and because of the stipulation for erecting a warehouse. He further alleges that the street has been obstructed by the elevator, switch tracks and cars standing thereon and the receiving dock. He also alleges that in January, 1906, he revoked the permission to construct and maintain the switch and gave notice of the termination of the agreement concerning the switch privileges and right of way.

The answer, after pleading the several vacating ordinances, alleges the execution of the agreement referred to, avers that it has been performed by appellants, that it is still in full force and effect; that the way had not been closed or obstructed; that it has been improved so as to make a good roadbed, and that there has been no denial of ingress or egress over it.

The testimony of the appellee concerning the obstruction of the way was, in brief, that cars were left standing on the switch, so he could not get out or in with teams, that this occurred "every few days"; that he could hardly get out or in with a load because the track was not fixed as agreed; that there was no way of going out or in from his property except over a twelve foot strip between the switch and the elevator; that a slope or grade had been made over the conveyor; and wagons had been stalled at different times at that point. He testified that he complained of this condition but appellants would do nothing. A witness for the appellee who had been in his building for four years testified:

"There are two routes north from the Perkins building, on Ferry St. to Minnesota Ave., one is level and one has quite an abrupt raise. There is one car there nearly all the time on the Weston Switch, stands usually

at the conveyor, more than one car occasionally. If two cars and one was pinched down, quite likely over driveway of level route. Don't know just where Ferry St. is. Have occasion to drive over this ground back of Weston's. The condition there has not caused very much inconvenience, just two places where the switch can be crossed, 8 ft. in width."

Ferry street extends north a short distance to Minnesota avenue, one of the principal thoroughfares of the city. From the location and use of the warehouses of both parties it is evident that the use of Ferry street or of the way over that part of it vacated by the last ordinance affords the only practical ingress and egress for both parties in carrying on their business. It is also apparent that all the vacation ordinances were in the interest of the lot owners, the city authorities probably believing that the improvements contemplated would be of substantial public benefit. The parts vacated in the interest of the appellee were in their unimproved condition of no public use. The parts vacated at the instance of the appellants were of some use, it appears, to a few families, although the street, being practically unimproved, was in a bad condition, and it does not appear that anyone has complained of the vacation except the appellee. The vital question to be considered is whether in the situation here presented grounds exist for an injunction in his behalf.

The parties were engaged in the same business. The importance of the way to both, whether it remained a street or not, was fully understood. The appellee entered into a contract recognizing the appellants' rights to grant a right of way, thus recognizing the validity of the last vacation, for if the street was not vacated his right to pass and repass could not be questioned. The conduct of the appellee for over two years was inconsistent with the theory that the street had not been vacated. Expenditures were made and the way improved by the appellants by putting in cinders and crushed rock from time to time, and expenses were in-

curred in locating and relocating the switch. The appellee saw the building being erected by the appellants partly in the vacated street without objection, and without attempting proceedings to prevent it.

Courts of equity frequently refuse relief after undue and unexplained delay when injustice would result by granting it. (*City of Leavenworth v. Douglass,* 59 Kan. 416, 53 Pac. 123.) In this case there was not only long delay, but an express recognition by contract of the rights claimed by appellants. With full knowledge of the facts, the appellee saw fit to secure rights and privileges by negotiation and agreement which he now asserts were already his. Then he recognized the vacation as valid, now he asserts that it is void. Another reason is suggested why the appellee's prayer for an injunction should be refused. He had engaged in the same undertaking he now denounces as unlawful and is enjoying the fruits of a like proceeding. He claims that the streets south and east of his lot were legally vacated and also claims the reversion of adjacent property. Yet the ordinances are in the same terms. It is said that the validity of the first ordinances is not questioned, and that the appellants have no standing to question it because they do not own property abutting upon the part of the street then vacated. This fact might prevent them from obtaining affirmative relief, but are they estopped from pleading the apparent want of equity in the claims of their adversary who asserts rights in himself of the same nature which he declares to be unfounded in them? Without regard to this feature of the case, however, it is believed that the appellee is bound by his contract and his acquiescence in the claims of the appellants. His remedy is not the extreme and doubtful one of setting aside an ordinance, but of enforcing the contract.

The power to vacate streets is expressly conferred upon the city council by law. The limitations upon

that power were considered by this court in the Leavenworth depot case just cited and in *Heller v. A. T. & S. F. Rld. Co.*, 28 Kan. 625. The legislative power over streets was again discussed in *Highbarger v. Milford*, 71 Kan. 331, 80 Pac. 633. It may be conceded that notwithstanding the plenary power of legislation equity will interfere in a proper case to protect vested rights, but how far a court of equity may go in setting aside ordinances enacted in pursuance of legislative authority it is not necessary now to decide. The power of a city council in the vacation of streets, how far the motives of its members may be considered, and the effect where the object is the benefit of an individual, are questions discussed in volume 3 of McQuillin on Municipal Corporations, § 1402 *et seq.*, and in 3 Dillon on Municipal Corporations, 5th ed., § 1160, and notes. In the following cases diverging views of courts upon these questions are shown: *Tilly v. Mitchell & Lewis Co.*, 121 Wis. 1, 98 N. W. 969; *Kean v. Elizabeth*, 54 N. J. Law, 462, 24 Atl. 495; *State, ex rel., v. Board of Park Comm'rs*, 100 Minn. 150, 110 N. W. 1121; *The City of Marshalltown v. Forney*, 61 Iowa, 578, 16 N. W. 740; *The People v. A. T. & S. F. Ry. Co.*, 217 Ill. 594, 75 N. E. 573.

The court is inclined to the opinion that the vacating ordinances are valid, but it is not necessary to decide that question since the rights of the parties should be determined by the contract.

It is said that this court can not disturb the judgment since the evidence is not all presented. The testimony of the parties however is here. The contract was pleaded and its existence is admitted. The appellants concede that it is in force and no reason is shown why the rights of both parties should not be measured by its terms. True, the appellee says it has not been kept by the other party, but the remedy for this default is not in reopening a street which the parties, acquiescing in the ordinance of the city, have treated as va-

cated, but by protecting the parties in the reasonable use and enjoyment of the privileges given by the contract. This does not necessarily mean that the appellee should have the unrestricted use of the entire width of the former street, but a reasonable right of way consistent with the business of both parties without unnecessary hindrance or obstruction.

The judgment reserves the right of the railway company, whose switches are manifestly an advantage if not indispensable to both parties. This order was made by consent and of course is proper. But the judgment annuls the ordinance vacating the street, and forever enjoins the appellants from interfering with its use as a public street. This goes far beyond what is considered equitable.

The judgment is reversed and the cause remanded with directions to enter judgment for the defendants.