No. 22,936.

M. G. BISSEY et al. (ROBERT C. CAMPBELL, *Appellant*), v. THE CITY OF MARION et al., *Appellees.*

SYLLABUS BY THE COURT.

MANDATORY INJUNCTION — *To Compel Completion of Approaches to Bridge—Demurrer to Evidence Erroneously Sustained.* In an action for a mandatory injunction to compel a city of the second class and its commissioners to complete the approaches to a bridge, over a creek crossing a public street, the evidence is considered, and (following a former decision in the same case: *Bissey v. City of Marion,* 104 Kan. 311, 178 Pac. 611), it is held, on the facts stated in the opinion, that it was error to sustain a demurrer to the plaintiff's evidence.

Appeal from Marion district court; ROSWELL L. KING, judge. Opinion filed January 8, 1921. Reversed.

*Stanley W. Howe,* of Florence, for the appellant.
*Braden C. Johnston,* of Marion, for the appellees.

The opinion of the court was delivered by

PORTER, J.: In the city of Marion, in the year 1908, a bridge was built over a creek where it crosses Maple street. Previous thereto a number of bridges which had been washed away by floods had been replaced. The present bridge was built by the county under an agreement with the city by which the latter was to pay one-fifth of the cost and was to provide suitable approaches. The city partially constructed approaches on piling at each end of the bridge, but for the past twelve years the approaches have stood fifteen feet above the level of the street so that the bridge remains impassable. In 1917, M. G. Bissey and Robert C. Campbell brought this action for a mandatory injunction to compel the city to put the bridge in condition for travel. A demurrer to the petition was sustained and they appealed. (*Bissey v. City of Marion,* 104 Kan. 311, 178 Pac. 611.) It was held that Bissey could not maintain the action because his interest was no different in kind from that of the general public, his property being located some distance from the bridge on a cross street opposite the point at which Maple street terminates. But Campbell, who owns a tract of land on one side of Maple street and on both sides of the creek where it is crossed by the bridge, and abutting on the part of the street over which the travel is prevented, so that he is unable to pass over the street from one part of his land to the other, was held qualified to maintain the action. The judgment was affirmed as to Bissey, and the court was directed to overrule the demurrer to Campbell's petition. In the opinion it was said:

"The facts alleged seem to amount, either to an actual obstruction of the street, or to the creation of a condition analogous thereto, by a failure on the part of the city authorities to perform the duty of keeping the street fit for travel." (p. 312.)

Commenting upon the contention of the defendants that the manner of dealing with the problem was to be determined by

them in the exercise of their best judgment, it was said in the opinion:

"The petition, however, alleges that in failing to afford relief from the condition complained of, and in suffering that condition to continue, the defendants have acted 'arbitrarily' and 'in abuse of the discretion vested in them.'" (p. 313.)

It was held that "the power of the court to constrain the action of the defendants may depend wholly upon their mental attitude—upon whether, on the one hand, they are using their best judgment, or, on the other, are acting capriciously or arbitrarily. Whether or not their conduct is arbitrary may thus become the ultimate fact in issue." (p. 313.) The petition was held sufficient as against a demurrer because it set out in considerable detail "the omission for a period of some ten years to take steps necessary to render the bridge usable and the street traversable." (p. 314.)

On the second trial the court sustained a demurrer to Campbell's evidence and he appeals. The defendants admitted in their answer and on the trial facts sufficient to establish a cause of action as against a demurrer. The general denial in the answer put in issue the charge that defendants' refusal to make the bridge suitable for travel was arbitrary or capricious. It denied that during any of the times mentioned in the petition, the city has had funds wherewith to pay for completing the approaches to the bridge; and as a final defense alleged that the inconvenience caused Campbell by reason of the present condition of the bridge is so slight and of such little consequence that it would not justify the city in making the outlay required to complete the approaches. On the trial it was admitted that Campbell's land, as described in the petition, extends across the creek and abuts on the street as alleged.

That the trial court decided the demurrer upon an erroneous view of the law as applied to the undisputed facts becomes apparent from statements made by the court in ruling upon certain questions and in unduly restricting the issues. The defendants admitted that Mr. Campbell was represented by an attorney who appeared before the commissioners in February, 1917, in support of a complaint of certain citizens with reference to the uncompleted bridge and that the board refused to take any action. Counsel for the plaintiff then asked

Bissey v. City of Marion.

defendants to admit as a fact that the commissioners on September 9, 1919, had authorized the mayor and city clerk to invest $5,000 of water and light funds and $5,000 from the general fund in interest-bearing securities.   The court inquired what the purpose of that kind of testimony was, and counsel stated that under the decision of the supreme court the mental attitude of the commissioners was proper to take into consideration.

"By the court: Well, objection sustained; it occurred long since this suit was filed."

Mayor Good was a witness, and in answer to questions asked by the court, stated that the partial approaches which were built at both ends of the bridge by means of piling driven in the ground and bridge timbers built across the piling with plank floor, extended approximately 48 feet from each end of the bridge and that the ends of the present approaches are approximately 14 feet above the ground, and that it would be necessary either to extend the approaches or construct a fill with retaining walls.   At the time he and another commissioner visited the bridge and considered the matter, he estimated that it would have cost from $1,600 to $2,000 to complete the approaches and that the price of labor and material at the time of the trial was very much higher.   The court restricted the inquiry, however, to the conditions in 1917.   By the court:

"Q. I will ask you now, Mr. Good, whether you had funds available at the time or prior to the time this suit was commenced, in 1917, considering the other improvements and things that had to be provided for? A. Providing for the things we considered more necessary than this improvement, we had no funds with which to do the work, insufficient funds."

A witness testified that he prepared a plan and presented it to the city commissioners and that Mayor Good said at the time it was the most feasible plan he had seen.   The witness offered to do the work, including concrete abutments, stringers, plank floor, railings and the proper filling for $860, but, in his opinion, at the time of the trial the work would cost two or three times as much.   The plaintiff sought to prove that no estimate had been furnished by the commissioner of streets or any action taken regarding the expense necessary to complete the bridge up to the time of the trial.   The court sus-

tained an objection on the ground that it would make no difference what the attitude of the city officers has been since the suit was filed. It was shown, however, by the commissioners' testimony that in their tax levies they had never included an estimate for the completion of this bridge.

The nature of the action and the relief sought made the evidence showing the attitude of the present commissioners relevant and competent in every respect. The plaintiff seeks to abate a continuing nuisance which, if the theory upon which his suit was brought is sound, becomes more intolerable from day to day. The main issue to be determined was, whether the facts warranted the court in granting a mandatory injunction against the commissioners and the city compelling them to take action to complete the bridge and abate the nuisance. The fact that some of the defendants, who were commissioners when the action was brought, are no longer in office makes no difference. The office of city commissioner, like that of the King, never dies. Individuals come and go, and serve in that capacity, but the office itself continues; and the same duty which rested on the commissioners at the time the action was brought, which was to act in good faith and use their best judgment in the matter of completing this bridge, and not capriciously or arbitrarily refuse, rests upon their successors in office. The question here is not whether it was error to reject certain testimony; it was not produced on the motion for a new trial; but the refusal of the court to permit proper evidence makes it obvious that the court sustained the demurrer upon an erroneous theory.

The plaintiff sought to show that he suffered great inconvenience by being deprived of the use of the bridge when he wanted to go from his residence to the business part of the town. His inconvenience in this respect appears to be no different from that sustained by the public in general, because the evidence showed that he could reach the business part of the city from his residence without going out of his way. This, however, is unimportant because of defendants' admissions as to the location of his property with respect to the bridge. It may be said that the particular inconvenience suffered by him in going from one part of his land to the other might have been more clearly shown by evidence. The long

continued delay of the city in completing this bridge; the fact, which does not seem to be disputed, that the commissioners have had on hand ample funds which could have been used for that purpose, and that it was and is their duty to levy necessary taxes for such purpose, and that they are not justified in refusing to perform their duty from mere obstinacy, caprice or arbitrariness, make a *prima facie* case which requires evidence to overcome.

The judgment is reversed and the cause remanded with instructions to overrule the demurrer.