No. 24,487.

*In re* Appeal of C. P. BOLMAR, *Appellee,* ·v. BOARD OF COUNTY COMMISSIONERS et al., *Appellants.*

SYLLABUS BY THE COURT.

MUNICIPAL CORPORATION—*Vacation of Public Streets—Private Rights Injured and Endangered.* Where a statute authorizes the board of county commissioners to vacate a public street in a platted townsite or addition to a townsite upon a petition of the owners of the lands adjoining the street proposed to be vacated and upon a proper finding that no private rights will be injured or endangered thereby, the fact that the street is little used, not improved, full of stumps, and intercepted by a dangerous railroad crossing will not justify the vacation of the street where such vacation cuts off all public access to an objecting owner's lots in such townsite or townsite addition, although such objecting owner could make a private road over his own adjacent farming lands at his own expense and thus reach his town lots which had theretofore been accessible by the public street proposed to be vacated.

Appeal from Shawnee district court, division No. 1; JAMES A. McCLURE, judge. Opinion filed November 10, 1923. Affirmed.

*Bennett R. Wheeler, S. M. Brewster, John L. Hunt, Luther Burns,* all of Topeka, and *Tinkham. Veale,* county attorney, for the appellants.

*W. R. Hazen,* of Topeka, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal from a judgment setting aside an order of the board of county commissioners of Shawnee county which vacated certain streets in Belvoir addition to the city of Topeka.

Belvoir addition is a platted tract of land lying west of the city, bounded on the north by the Kansas river, and divided through the center east and west by the Rock Island railway. The railway company has acquired all the lots in Belvoir addition north of the railway tracts except two lots or tracts of 5 acres each, numbers 22 and 21, which belong to Bolmar, the appellee. Bolmar owns 32 acres of farming land contiguous to his lots in Belvoir addition, and this acreage together with his two 5-acre lots in Belvoir addition are operated at the present time as one body of land. The plat annexed shows the situation:

The defendant board of county commissioners vacated Bolmar avenue and Ward avenue, as shown by the plat, thus cutting off access over any public way to Bolmar's lots. He can make a private

road thereto, at his own expense, over his own farming land from the north end of Winter street which is a public thoroughfare shown on the plat, a distance of 512 feet from the nearest corner of lot 22, and about 850 feet from the nearest corner of lot 21. About two blocks west of Winter street Bolmar has a private crossing to and from his farm, indicated as the north end of Waite street on plat, but the ground thereabout is deep sand, and it would be too expensive and impracticable to make a private road from the railway crossing at Waite street to Bolmar's lots in Belvoir addition.

The trial court made extended findings of fact, to which neither party objected; it also made two conclusions of law which were challenged by the defendants. These read:

"2. That the private right of appellant C. P. Bolmar will be injured by such vacation in that he will be deprived of one of the two ways of ingress and egress to the land described as Lots Nos. 21 and 22, which right of ingress and

egress, although of little value because of the condition of Knox and Ward avenues, and because of the other means of ingress and egress mentioned in the Findings of Fact, is a private property right of which he cannot be deprived without compensation and in a proceeding of this kind.

"3. That said order of vacation is void and should be set aside except as to such portion of Ward avenue lying west of Knox avenue, and as to such portion of Ward lying west of Knox avenue to the west line of Belvoir, said proceedings are valid."

Judgment was entered in favor of Bolmar, and the county board appeals.

The vacation of Bolmar and Ward avenues was undertaken pursuant to sections 813, 814, General Statutes of 1915, which provides that upon a petition of the owners of the lands adjoining on both sides of a street, in a town, townsite, or addition thereto, etc., praying for the vacation of such street, filed with the county board, and due notice and a public hearing given thereon, the board may order the street to be vacated, if (1) "no private rights will be injured or endangered," and if (2) "the public will suffer no loss or inconvenience thereby." Considerable space is taken up in the abstracts and briefs as to the dangerous character of the railroad crossing at Ward avenue, and it was shown and admitted that one weighty reason for granting the petition was because the railway crossing was dangerous, especially to children who used it in going to the Kansas river. Another reason given for the action of the county board was that Ward avenue had a bad hill which stalled loaded teams, and that it had not been improved and was full of stumps.

Whatever powers the county board may have by grant of other statutes to close a public highway for any or all of such reasons, and however meritorious and weighty such reasons may be, they could not authorize the vacation of Bolmar and Ward avenues under this particular statute (Gen. Stat. 1915, § 813 *et seq.*) To set in motion the machinery of this statute a petition of the owners of adjacent lands—all of them—must be filed, and on notice and hearing, two conditions must be found to exist ere the street can be vacated—no injury or danger to private rights, and no loss or inconvenience to the public. If these two conditions do not exist, some other statutory authority must be found to authorize the closing of the street. And the question whether private rights are injured or endangered by the closing of a public street, is subject to judicial review. (*Bolmar v. Shawnee County,* 109 Kan. 91, and citations, 197 Pac. 880.)

*Foster v. City of Topeka,* 112 Kan. 253, 210 Pac. 341, is cited to

justify the order of the county board. Analogy between the Foster case and the one before us is too remote for practical consideration. The vacation proceedings were under different statutes, and the vacation by a city ordinance of an alley which was merely an extra convenience to adjacent property is materially different from the vacation of a street which cut off all public access to the property. Moreover the power to enact the city ordinance in the Foster case was not dependent on the petitioning assent of every adjacent landowner, nor was its exercise subject to the statutory condition that no private rights be injured or endangered to give it validity.

The trial court found that at present Bolmar operated his two 5-acre lots in Belvoir addition in connection with his 32-acre tract bounding them on the west, and found that while such use of them should continue "the access to said lots from Knox avenue, Ward avenue and Bolmar avenue is of very little value to said lots." The court also found:

"13. The public generally has suffered no loss or inconvenience by these vacation proceedings, and the only right of appellant which has been injured is the right of ingress and egress to the east along Bolmar, Ward and Knox avenues as above stated, thus depriving him of one of the two possible ways of ingress and egress to said lots or tracts."

Under the protection of our state and federal constitutions and the principles of equity and notions of justice which are the inheritance of a free state, private rights of little present value are not to be snuffed out without compensation. On the faith of the public dedication of these streets, Bolmar acquired these 5-acre tracts. Situated as they were adjacent to the young capital of a young commonwealth, with public streets leading thereto, Bolmar might confidently look forward to the enhancement of their value, and to a demand for them for homesites for our growing population, but if public access to these lots is completely cut off because the railway crossing thereabout is dangerous or because it will cost money to grade down the hill on Knox avenue, or to take out the stumps on Ward avenue, and no compensation is awarded to Bolmar, then the constitutional guaranties of private rights and the principles of equity will mean nothing to Bolmar. The elimination or rectification of the dangerous railroad crossing was a highly commendable public purpose, but it should have been effected at public expense, not at Bolmar's unrequited detriment.

In *Highbarger v. Milford,* 71 Kan. 331, 80 Pac. 633, it was said:

"It must be conceded that when one purchases a lot or block of platted land

fronting upon a street affording access thereto he obtains, also, as a part of the valuable rights thus secured, the right of passage over and along the street fronting such premises, for the purpose of ingress thereto and egress therefrom. This right is one that cannot be taken away from him by the public without due and proper compensation." (p. 339.)

Nor does the fact that Bolmar could supply himself with a private road over his own land to reach his lots in Belvoir addition, and that at present he is using his 32-acre tract and these Belvoir lots as one tract of farming land, bar his right to relief.

In *Smith v. City of Boston*, 7 Cush. (Mass.) 254, cited by appellant it was said:

"A man may have a farm, store, mill, or wharf, not bounding on a street, but communicating with it by a private way, so situated that he has no access to his property but by the public way. If this is discontinued, he must lose the benefit of his estate, or open a way at his own expense, which might be a direct and tangible damage, consequent upon the discontinuance of the public way, and we are not prepared to say that he would not have a claim for damages under the [Mass.] statute."

In *Perkins v. Weston*, 87 Kan. 557, 563, 125 Pac. 83, it was said:

"The power to vacate streets is expressly conferred upon the city council by law. The limitations upon that power were considered by this court in the Leavenworth depot case just cited and in *Heller v. A. T. & S. F. Rld. Co.*, 28 Kan. 625. The legislative power over streets was again discussed in *Highbarger v. Milford*, 71 Kan. 331, 80 Pac. 633. It may be conceded that notwithstanding the plenary power of legislation equity will interfere in a proper case to protect vested rights. . . ."

Cases are cited which hold that no one is entitled to damages because of the vacation of a road, but when damages are actually sustained and no legal redress is supplied by the ordinary course of the law, then the extraordinary remedy of injunction or mandamus may be invoked; and indeed, if we go back to fundamental principles, it is only where there is no redress in the ordinary course of the law, that injunctive or other extraordinary relief can be invoked. In *Sample v. Jefferson County*, 108 Kan. 498, 501, 196 Pac. 440, it was said:

"The statute relating to vacating highways makes no provision whatever for paying damages to persons whose property may be taken by that method, and whatever the rule may be relating to cities, no action lies against a county for damages resulting from vacating a highway or removing a bridge (*Comm'rs of Coffey Co. v. Venard*, 10 Kan. 95; *Silver v. Clay County*, 76 Kan. 228, 91 Pac. 55). Being otherwise remediless, the plaintiffs are entitled to an injunction preventing removal of the bridge. . . . Leaving out of account depreciation in market value of the land by rendering it less accessible to market, and

leaving out of account the inconvenience of using a makeshift road, removal of the bridge would constitute a taking of the plaintiffs' property to the extent of the expenditures indicated. The plaintiffs are not obliged to yield their property without compensation, the commissioners are not allowed to make compensation, and consequently the plaintiffs are authorized to appeal to a court of equity to prevent a deprivation of property." (See, also, *Bissey v. City of Marion,* 104 Kan. 311, 313, 178 Pac. 747; *id.,* 108 Kan. 252, 194 Pac. 918.)

But it is useless to cite or quote further from analogous cases. Even if it should be conceded that the legislature has constitutional power to close a public street, thereby cutting off ingress and egress to private property, and without compensation to the owner for such deprivation, when the owner can supply a road thereto at his own expense over his own adjacent land, it should be sufficient here to say that the statute which governed the vacation of Bolmar and Ward avenues is not so sweeping. It could only be undertaken where all the owners concerned had signified their willingness that it be done, and upon an unassailable finding that no private rights would be injured or endangered thereby. At the inception of these proceedings Bolmar did sign the petition to vacate, but did so in the mistaken belief that the railway company which wanted the streets vacated would buy his property, but on being advised to the contrary, he withdrew his name from the petition, as he had a right to do, before the board acted, so his assent was wanting; the vacation of Bolmar and Ward avenues did injure his private rights so that statutory prerequisite to the lawful vacation of the streets was likewise wanting.

The judgment is affirmed.