No. 29,272.

Frank Bohan, *Appellant*, v. The Board of County Commission-
ers of the County of Sumner and J. W. Mavity, County Engi-
neer of Sumner County, *Appellees*.

(289 Pac. 436.)

Opinion
filed July 5, 1930.

*J. Graham Campbell* and *W. M. Glenn,* both of Wichita, for the appellant.

*Bert E. Church,* county attorney, *E. J. Taggart* and *John Bradley,* all of
Wellington, for the appellees.

The opinion of the court was delivered by

Hutchison, J.: This is an action in mandamus by the owner of
land with about 120 feet of frontage on the north side of a public
highway in Sumner county to compel the board of county commis-
sioners and the county engineer, under R. S. 68-543, to construct a
culvert over a ditch along the public road in front of his property
and separating his property from the highway.

The plaintiff in his petition alleged that for many years he had
enjoyed direct connection and access to and with the highway until

April, 1927, when defendants constructed a ditch of such depth as to obstruct the usual entrance connecting his property with the highway, and further alleged that defendants constructed a wooden trestlework, runway or bridge as an approach to the bridge across the river, obstructing the usual entrance connecting plaintiff's property.

Plaintiff further alleged that prior to and during the construction of such trestlework bridge he was assured by the defendants that if he would refrain from bringing any legal proceedings to restrain the work they would and did agree that suitable and sufficient road or bridge would be built giving him access to the highway from his land, and since the construction of the bridge they have refused to do so. The alternative command of the writ was "to construct either a culvert, a fill, or a culvert with a fill, or a bridge such as would be necessary to provide and maintain the usual entrance connecting the plaintiff's said property with said public highway."

The answer to the alternative writ was a general denial, and it was alleged therein that to grant the plaintiff a connection with the trestlework bridge where his connection was before the flood, which made necessary the building of the bridge approach, would result in a hazardous and dangerous condition to the roadway, and it was not, in the opinion of the defendants, a practical thing to do, and the action of the plaintiff is to prevent them as officials from the exercise of their discretion. The answer further alleged that a private road had been laid out by the board, on petition of plaintiff, affording him access to the public highway west of where he now demands such access, and that plaintiff acquiesced therein by paying the condemnation money awarded.

An agreed statement of facts and the testimony of plaintiff show that plaintiff's land is bounded on the south by this public highway, which leads to the bridge over the river running along the east side of plaintiff's land. The recent flood washed away the road as well as the surrounding land to a considerable depth, so that when the trestlework bridge was constructed to the same height as before it was from four to six feet above the level of ground on the north side of the highway. It was supported on piling, and the approach to the bridge extended past the whole frontage of plaintiff's land and eighty feet further to the west, where it first struck the grade. It was an eighteen-foot slab road on the piling and con-

tinued the same width where it struck the grade to the west, but was then in a road sixty feet wide.

Plaintiff for many years conducted a camping resort on his land, where he had erected seven tourist cottages. He leased the tract directly south of his and across the highway, and owned and operated thereon, in connection with his cottages on the north, a restaurant, accessory and auto-supply store, bath house, bathing pool, boating facilities and some cottages.

The old road at grade afforded easy access between the two tracts. Just west of plaintiff's land fronting on the highway is a tract 350 feet long running west along the highway and 150 feet north and south. Plaintiff's former access or crossing was just at the east end of this Hilton tract, and what he petitioned for was a crossing 100 feet farther west, which would have cut the Hilton land in two, with 100 feet on the east and 250 feet on the west side of such private crossing. Plaintiff's own land continued west as far as that of Hilton's, but separated on the western extension from the highway by the Hilton land 150 feet wide. The private road was located by the county board at the west end of the Hilton tract, or 250 feet farther west than requested by plaintiff and 350 feet farther west than where plaintiff now demands it.

Hilton and the neighbor still farther to the west are engaged in the same line of business as plaintiff, and by the use of the private road customers will have to pass the camps of these two competitors to reach the plaintiff's grounds.

The trial court sustained a demurrer to plaintiff's evidence, from which ruling the plaintiff appeals.

The questions involved, as stated by the appellant, are: first, the right of the plaintiff to the equitable relief sought in the action; and second, the error in rejecting the evidence offered by the plaintiff to explain the relation of the plaintiff to the proceedings before the county board in connection with the laying out of the private road at the west end of the Hilton land.

Appellant presses his right to equitable relief because he has no adequate remedy at law, and particularly has no right to recover damages. He cites many cases to the effect that the extraordinary remedies of injunction or mandamus may be invoked under such circumstances, but while they may be invoked, they are not always available for relief when no other remedy is afforded. The more

nearly correct rule is as contained in the latter part of the citation by the appellant from the opinion in the case of *Bolmar v. Shawnee County,* 114 Kan. 552, 220 Pac. 245:

". . . It is only where there is no redress in the ordinary course of the law that injunctive or other extraordinary relief can be invoked." (p. 556.)

The argument of the appellant, based on the pleadings and the evidence in this case, is quite convincing that there may be no other adequate remedy left for the plaintiff. His reason for not acting sooner or in other ways was because of misrepresentations and false promises made by these defendants, on which he relied. These allegations would go far in a personal action or a damage suit, but avail very little in a mandamus action and where the public is concerned. Four of the cases cited in support of this contention are where injunctions were procured before the objectionable thing had been done. In such cases the court could very properly exercise its equitable power by preventing the matter from proceeding further along the proposed line unless the plaintiff's rights were suitably protected. Two other cases cited were appeals from orders made by boards of county commissioners vacating highways or streets, and one, *State v. Irrigation Co.,* 63 Kan. 394, 65 Pac. 681, a mandamus action against an irrigation company to compel it to construct culverts or bridges over the ditch where it crossed the public highway. The last case is quite in point except it did not involve the element of discretion, as may be involved when public officers are the parties defendant.

R. S. 60-1701 permits the issuance of a writ of mandamus "to compel the performance of an act which the law specifically enjoins as a duty resulting from an office, trust or station." This action is brought to enforce such a specific duty under R. S. 68-543, which is as follows:

"That whenever it is necessary to make a ditch along a public road in front of any property of such depth as will in the opinion of the officials in charge of such road obstruct the usual entrance connecting such property with the public highway, it shall be the duty of the county engineer to cause to be constructed and maintained a substantial culvert over the said ditch, so as to make a good, safe crossing. The county shall pay for such improvement on county roads and the township on township roads."

But plaintiff did not limit his allegations nor his evidence to the matter of such ditch obstructing the usual entrance. He went further and alleged and proved the existence of a trestlework bridge,

and that it was only eighteen feet wide and four or more feet high above the general level of the surrounding ground, and might require in addition to a culvert a fill or bridge, which are not mentioned in R. S. 68-543. The plaintiff virtually dispensed with the need of a culvert under the statute or otherwise when he testified as follows:

"The ground between bridge and the north land is just washed out about six feet on the top of the bridge; the ditch north of the pile bridge does not drain any territory; it only runs back west fifty or sixty yards and no water runs there, no more than on the south side and there is no drain there. No need of a culvert or anything of that kind on the north side, as there would be no water to dam up. The approach on the south side is just a solid fill; no culvert, no need of one, and no more need for one on the north side."

The additional allegations of the petition, the commands of the alternative writ and the testimony of the plaintiff all show that something more than a culvert across a ditch is wanted by plaintiff, and something more than what is covered by the statute requiring the county engineer to construct a culvert over a ditch (R. S. 68-543), and something more than "an act which the law specifically enjoins as a duty," that something more being, in the language of the alternative writ, "a fill" or "a bridge," and that not only "to make a good, safe crossing," but to provide an entrance connecting plaintiff's property with the highway on the trestlework bridge. This being more than the statute provides or requires, it is not necessarily an official duty or ministerial act, but involves discretion on the part of the officers charged with such duty, and is not a matter to be enforced by mandamus.

"Mandamus will not lie to compel a public officer to do an official act unless the act be ministerial and not discretionary." (*State of Kansas, ex rel. Ross, v. Robinson and others,* 1 Kan. 188, syl.)

"It is a well-recognized rule that where the performance of an official duty or act involves the exercise of judgment or discretion the officer cannot ordinarily be controlled with respect to the particular action he will take in the matter. . . ." (18 R. C. L. 124.)

See, also, *Insurance Co. v. Wilder,* 40 Kan. 561, 20 Pac. 265; *State, ex rel., v. Osage County,* 112 Kan. 256, 210 Pac. 619.

In connection with this feature of the case there should also be considered the fact that the defendants had, prior to the commencement of this action, laid out a private road for the use of the plaintiff, giving him access to the public highway at the west end of the Hilton tract. It may be that this private road was not wisely or

legally located and laid out, and it may be very inconvenient for the plaintiff and almost ruinous to his business, yet the very act of establishing it was the exercise of a legislative and administrative power of the board and such as cannot be controlled by the courts.

"Where a valid petition for the laying out of a road, or the vacation of one and its relocation on another line, is presented to a board of county commissioners and allowed, its determination as to the practicability of the proposed road, including the convenience and public utility of the same, involves the legislative and administrative powers of the board, and the exercise of these functions is beyond the jurisdiction of the district court, and no appeal is allowed from the decision." (*Evans v. Edelbrock,* 106 Kan. 233, syl. ¶ 1, 187 Pac. 664.)

In a very recent case a landowner, after having been furnished ingress and egress in a way that was not at all satisfactory to him, brought an action to enjoin the closing of the old road, and the court said:

"The court may not usurp the functions of the state highway commission, legislative as they are in character, nor the discretion vested in the county commissioners under the statute. If a landowner is not denied ingress and egress to and from his land he cannot prevent by injunction the accomplishment of the measures devised for the safety and benefit of the public." (*Gantz v. Jefferson County Comm'rs,* 129 Kan. 66, 70, 282 Pac. 265.)

The plaintiff may not at this time have any other remedy, he may be very greatly inconvenienced by the provision made for his access to the highway, and it may even be ruinous to his business, but neither one nor all of these together will authorize the extension of the province of mandamus to the exercise of discretion by public officers in a matter of public interest.

Appellant complains of the ruling of the trial court in sustaining the objection to his evidence in explanation of his relation to the location of the private road at the west end of the Hilton tract, his offer showing that he thought it had been located where he had petitioned for it, and had not examined the records and had not knowingly acquiesced in or assented to its being located as it was.

Appellee was insisting upon plaintiff's conduct constituting an estoppel, and of course plaintiff pressed the introduction of this explanation. We do not think the situation was affected by estoppel; neither do we think the offered evidence was material. The private road had already been laid out; it required the exercise of discretion to locate it there or to locate it elsewhere; that discretion should not be controlled by mandamus, and the result in this case would have

to be the same with or without estoppel, and the same if the evidence had shown that the plaintiff had vigorously opposed every step toward the laying out of this private road.

We conclude there was no error in the excluding of evidence, and the writ was properly denied.

The judgment is affirmed.